THE STATE *ex rel*. MANNING V. HIGGINS.

Division One, December 10, 1894.

1. **Constitution : STATUTE: SPECIAL LAW.**   The act of the legislature of 1891 (Acts, p. 175), providing for the division of cities containing three hundred thousand inhabitants or more into districts for the election of justices of the peace, although it was intended to apply only to the city of St. Louis, is constitutional.

2. ———— : ———— : JUDICIAL OFFICERS.   Said act is not unconstitutional because the legislature provides therein that the division of a city into election districts shall be made by judicial officers.

3. ———— : ———— : ————.   Duties which are not judicial may be performed by a judicial officer, unless they are clearly such as are confided by the constitution itself to the executive or legislative departments.

*Mandamus*.

PEREMPTORY WRIT DENIED.

*T. J. Rowe* and *Nat. C. Dryden* for relator.

(1)   The law in question is special and unconstitutional. *Murnane v. St. Louis*, 123 Mo. 479; *State ex rel. v. Miller*, 100 Mo. 448; *State ex rel. v. Hammer*, 42 N. J. Law, 440; *Board v. Buck*, 49 N. J. Law, 228; *State v. Sloane*, 49 N. J. Law, 356; see, also, *Coutieri v. Mayor* (1882), 44 N. J. Law, 58; *Hammer v. State* (1882), 44 N. J. Law, 667; *Pierson v. O'Connor* (1891), 54 N. J. Law, 36; *State ex rel. v. Orange* (1892), 25 Atl. Rep. 268; *State v. Trenton* (1892), 25 Atl. Rep.

113; *Wheeler v. Philadelphia* (1874), 77 Pa. St. 338. (2) It is said there is no reasonable probability that any other city in this state will attain that population during the life of the law. There is no limit to the act in point of duration. A like argument was made against some other laws made applicable in cities of one hundred thousand or more inhabitants but a few years ago, but the prediction proved a false one in a very short space of time. *State ex rel. v. Bell*, 24 S. Rep. 765; *State ex rel. v. Tolle*, 71 Mo. 650; *Rutherford v. Hedden*, 82 Mo. 388; *State ex rel. v. Mead*, 71 Mo. 266; *Ewing v. Hoblitzelle*, 85 Mo. 73.

*W. C. Marshall* for respondent.

BLACK, P. J.—John G. Manning, intending to become a candidate at the November, 1894, election for the office of justice of the peace in the ninth district of the city of St. Louis, as that district was established by the act of the twenty-seventh of April, 1877 (Acts of 1877, p. 283), obtained a certificate of nomination signed by the requisite number of electors and presented the same to the respondent in his capacity of recorder of voters. Respondent refused to receive or file the certificate, assigning as a reason therefor that the act of 1877 had been repealed by the act of the twenty-third of April, 1891 (Acts of 1891, p. 175), and that a new district had been created. Thereupon the relator commenced this *mandamus* proceeding.

The controversy turns upon the validity of the act of 1891, the relator insisting that it is a special act within the meaning of those clauses of the constitution which provide that "the general assembly shall not pass any local or special law   *   *   *   creating offices, or prescribing the powers and duties of officers in counties, cities, townships, election or school districts."

And, "in all other cases where a general law can be made applicable, no local or special law shall be enacted."

The first section of the act of 1877 provides that: "The city of St. Louis is hereby divided into fourteen election districts for the election of justices of the peace." The same section creates the fourteen districts by designating the wards which shall compose each district. The second provides for the election of justices in the several districts so created.

The first section of the act of 1891 provides: "In all cities which now contain, or may hereafter contain, three hundred thousand inhabitants or more, there shall be elected, on the general election day A. D 1894, and every four years thereafter, one justice of the peace and one constable for each district in said cities, which district shall be determined, fixed and located as hereinafter provided." The third section makes it the duty of the "judges of the probate court, criminal court, criminal court of correction and of the circuit court, or a majority thereof," to divide their respective cities into districts upon the basis of population as specified in the second section. All inconsistent acts and parts of acts are repealed. A majority of the judges of the designated courts performed the duty thus imposed upon them in due time.

In the case of *State ex rel. v. Walton*, 69 Mo. 556, the act of 1877 was assailed on the ground that it was a special law within the meaning of the constitutional clauses before quoted, but this court held it could not be a special act, because other provisions of the constitution had so separated the city of St. Louis from the former county of St. Louis as to give it an organization different from that of any county or other city, thus making legislation necessary, which would be applicable to it alone. Let it be conceded, as is insisted

by counsel for the relator, that the act of 1891 was intended to, and can only apply to, the city of St. Louis, still it is no more a local or special law than the act of 1877, so far as it relates to the establishment of districts and provides for the election of justices of the peace therein.   That case is, therefore, directly in point, and it is deemed useless to go over the ground again.

It is true the act of 1891 differs from the act of 1877 in this, that it gives to each justice a salary, and allows each justice to appoint a clerk, and defines the jurisdiction of justices of the peace in the city of St. Louis; but these and some other provisions have nothing to do with the question now in hand.   The only question here is whether those questions are constitutional, which provide for districts and the election of justices of the peace therein.   With the other sections we are not concerned at this time; for an act may be valid in part and void in part.

It is next insisted, or rather suggested, that dividing a city into districts is a legislative duty, and as the act of 1891 devolves that duty on judicial officers, it is in conflict with article 3 of the constitution, which provides:

"The powers of government shall be divided into three distinct departments—the legislative, executive and judicial—each of which shall be confided to a separate magistracy, and no person, or collection of persons, charged with the exercise of powers properly belonging to one of those departments, shall exercise any power properly belonging to either of the others, except in the instances in this constitution expressly directed or permitted."

When this article speaks of "three distinct departments—legislative, executive and judicial"—it means those departments as they are defined by the constitu-

tion, each having such powers as are therein specified. Duties which are not judicial may be performed by a judicial officer, unless they are clearly such as are confided by the constitution itself to the executive or legislative departments. As said in *People ex rel. v. Provines*, 34 Cal. 520, *loc. cit.* 540, where a like provision was under consideration: "There is nothing in the third article of the constitution which prohibits a judicial officer from exercising functions, not in their nature judicial, if they do not belong to either the legislative or executive departments, as they are defined and limited in the constitution."

Now, there can be no pretense that the duty of dividing the city of St. Louis into justice of the peace districts is a duty belonging to the executive department, as that department is defined by the constitution. Nor is it a legislative duty. It is very true the legislature had the power to define and locate the districts as was done by the act of 1877. But it was perfectly competent for that body to require the districts to be located and defined, and leave the act of locating and defining them to be performed as a ministerial act. Thus, the law relating to justices of the peace in counties provides that the county court shall divide townships having a city with a stated population, into districts for justice of the peace purposes. Though county courts are some of the courts in which the constitution vests the judicial power of the state, still, it can not be said the statute requiring them to divide townships into justice of the peace districts is unconstitutional. Many like duties are now and always have been devolved upon county courts in this state.

The case of *State ex rel. v. Tolle*, 71 Mo. 645, was made to turn on the language used in section 27, article 6, of the constitution, which section relates to the

organization of the circuit court of the city of St. Louis, but this court was then careful to say: "We do not wish to be understood as holding that the duties in question could not have been imposed without the aid of the constitutional provision above cited. Somewhat similar duties have been imposed upon judges in this state certainly since the year 1849, without any special constitutional authority therefor. R. S., sec. 3500."

It follows from what has been said that the duty of dividing the city of St. Louis into justice of the peace districts is ministerial, and not legislative or judicial, and that the act of 1891 is not unconstitutional, because it imposes this ministerial duty on the judges of the designated courts.

Peremptory writ denied. All concur. BARCLAY, J., will express his views in a separate opinion.

BARCLAY, J., concurs in the judgment denying the writ; but does not wish to be understood as intimating any opinion on the question whether or not such a duty as was sought to be placed, by the act of 1891, upon the judges of the probate and criminal courts in St. Louis, could lawfully have been exacted of them. As those judges acted in the matter, it is unnecessary to determine or intimate whether they could have been compelled to act.