# SUPREME COURT

OF THE

## STATE OF MISSOURI,

AT THE

OCTOBER TERM, 1894.

---

KENEFICK v. THE CITY OF ST. LOUIS; HARRINGTON'S ADMINISTRATOR, *Appellant.*

Division One, February 19, 1895.

1. **Constitution:** STATUTE: SHERIFF OF ST. LOUIS CITY. "AN ACT *regulating the compensation of the sheriff of the city of St. Louis,*" approved May 19, 1879, is a valid law, because necessary to give effect to section 13, article 9 of the constitution.

2. ——: ——:. ——. The act above named, in so far as it places on the circuit court, city of St. Louis, in general term, the duty of auditing the sheriff's accounts, is authorized by the constitution.

3. ——: OFFICERS: FEES. The effect of the constitutional provisions in regard to the fees of county officers (art. 9, sec. 12), and maximum compensation for certain city and county officers (art. 9, sec. 13) discussed.

4. ——: LOCAL AND SPECIAL LAWS. Legislation which is necessary, or appropriate, to carry into effect a command of the constitution, or is required or contemplated by its terms, is neither local nor special, within the meaning of that instrument. In respect to such topics the legislature has power to adopt such forms of enactment as they appear to demand.

VOL. 127—1                                                    (1)

5. ——: STATUTE. The nature of the subject dealt with by a law, as well as the form thereof, may often determine its constitutionality.

6. ——. A grant of power in a state constitution includes all those incidental powers which are needful to make the principal grant effective.

7. ——. No act should be declared unconstitutional, if it be fairly open to a construction which will harmonize it with the organic law.

*Appeal from St. Louis City Circuit Court.*—HON. JACOB KLEIN, Judge.

AFFIRMED.

The petition in this case was a bill of interpleader and set forth that the plaintiff was clerk of the St. Louis court of criminal correction; that Henry F. Harrington died in February, 1892, and that Edward H. Harrington was duly appointed his administrator; that during the years 1885, 1886 and 1887 the former was duly qualified sheriff of the city of St. Louis, and that during the year 1888, from January 1 to December 31, he was in said office in said city; that during the month of November, 1888, plaintiff, as clerk of the St. Louis court of criminal correction, collected fees to the amount of $764.70 from the city (which were taxed as costs in favor of said Harrington as sheriff, in various cases which had been disposed of in said court of criminal correction), as well as other items of fees due said sheriff, to the total amount of $991.51; all of which had been taxed as costs in divers causes in favor of said sheriff, and remained in the hands of said clerk; that the city of St. Louis claimed said fees by virtue of section 9, article 20, Revised Statutes of 1889, page 2159; and further claimed that said Harrington had already received for his services as sheriff (out of the fees of his office) the sum of $10,000, over and above the expenses allowed him in his settlements with

the said city of St. Louis, and that the said fees now'
in the hands of said clerk, should be paid to the treas-
urer of the city; that said Edward H. Harrington,
administrator, claimed that he was entitled to said
fees collected by plaintiff as aforesaid and had de-
manded that the same be paid to him, and threatened
to institute suit therefor.

The foregoing is the substance of the petition in
the nature of a bill of interpleader.

The money was paid into court and the parties
made their claims thereto, the said Harrington, admin-
istrator, by an interplea in which it is set forth that
said funds, so held by the plaintiff, were earned by the
said sheriff, as fees of his office, and were payable to
his administrator as part of the estate of said Henry
F. Harrington, and that he, and he alone, was author-
ized to receive and collect the same; and that the code-
fendant, the city of St. Louis, had no right to the
same, nor to require the plaintiff to pay the said fund
to the said city of St. Louis, etc.

The city of St. Louis, for answer and interplea,
stated that said Henry F. Harrington, as sheriff, was
entitled to receive and retain the sum of $10,000 for
each year of his term of office, over and above all
expenses allowed to him in his settlements as sheriff,
and that during the year 1888 he did receive and retain
the sum of $10,000 over and above all such expenses as
compensation of his office as sheriff; and that the
excess of said sum of $10,000 belonged to the city of
St. Louis and should be paid to it; that it was the
duty of the plaintiff on the first of January, 1889, to
pay over all said fees collected by him as aforesaid, to
the treasurer of the city of St. Louis; that this defend-
ant had demanded payment of said fees from plaintiff
and threatened to bring suit against plaintiff.

At the trial, Harrington's administrator rested his

case on the pleadings, and the city of St. Louis offered in evidence the reports of said sheriff, for various periods, of six months each, in 1887 and 1888; the last ending December 31, of that year.

The proceedings and action of the circuit court in general term, balancing the accounts so reported, and making a finding in respect thereto, as to the amount in the hands of Mr. Harrington as sheriff, were offered in evidence by the city.

To the introduction of these reports, and the action of the court thereon, the interpleader Harrington objected, that said reports were incompetent evidence, in that there was no valid law in force at the time authorizing or requiring such reports to be made, and the ascertainment of balances thereby shown was the result of an adjudication before a tribunal without jurisdiction, and such proceedings were null and void.

This objection was overruled by the court, and said reports were introduced; to which action of the court the interpleader Harrington excepted.

The reports sustained the claim of the city as above indicated, in that they tended to show that during the last term of office of said Harrington, he had received in fees of his office (over and above the expenses thereof) $10,000 for each year of his term.

And, thereupon, the court rendered judgment in favor of plaintiff, restraining and enjoining both defendants from instituting or prosecuting any suit against plaintiff for, or on account of, said sum of $991.50 so collected and received by him as fees earned by the said Henry F. Harrington, and that plaintiff be discharged of, and from, liability on account thereof to either of said defendants.

It was also adjudged that, as between the said defendants, the defendant Edward H. Harrington, administrator of Henry F. Harrington, deceased, take noth-

ing by his interplea herein of the fund of $941.50, in court, which was then awarded to the city of St. Louis, and the costs adjudged against the defendant, Harrington.

After the usual steps, the defendant Harrington, as administrator, appealed in due course.

*E. T. Farish* for appellant.

(1) The law in controversy, in regard to the sheriff of St. Louis county, is invalid because it is entirely different from that applicable to any other county in the state. Const., art. 9, sec. 12; also, art. 15, sec. 15. (2) Again, when a law is made necessary, either by direct provision of the constitution, or in obeying a positive constitutional requirement, it can no longer be regarded as a local or private act. *State ex rel. v. Shields*, 4 Mo. App. 259; *State ex rel. v. Walton*, 69 Mo. 558. (3) This law is also repugnant to, and inconsistent with, the constitutional provision, art. 9, sec. 13. (4) If, then, said law of 1879 is invalid, and, up to 1889, there was no valid law in force regulating the duties and compensation of the sheriff of the city of St. Louis, we are relegated to section 13, article 9 of the constitution.

*W. C. Marshall* for respondent, city of St. Louis.

(1) Appellant has no interest in this fund. *Thornton v. Thomas*, 65 Mo. 276; *In re Lewis*, 52 Mo. 550; *Pugh v. Evans*, 31 Mo. 295. (2) The act of 1879 is not unconstitutional. (3) The judgment of the circuit court is right and should be affirmed.

BARCLAY, J.—The facts out of which this litigation arose are sufficiently given in the statement opening the report of the case. That statement is in substance

identical with the one submitted to the court on behalf of the appellant, who represents the estate of the late sheriff, Mr. Harrington. We have modified it only in some immaterial respects to shorten its recitals.

The details of the procedure on the circuit are unimportant, since the appellant concedes that the appeal must fail, if it be held that the statute which he challenges is valid.

It will be noted that the controversy concerns fees accrued during the year 1888.

The decisive point in the case is upon the constitutionality of "AN ACT regulating the compensation of the sheriff of the city of St. Louis," approved May 19, 1879 (Laws 1879, p. 97; R. S. 1889, p. 2159, secs. 7 to 12).

That act, in brief, directs the sheriff of the city of St. Louis to keep account of all fees accruing to him by virtue of his office as well as of all expenses thereof.

It requires him to make reports of all those fees and expenses every six months, and his accounts are to be audited by the circuit court of the city of St. Louis in general term. He is entitled to retain, out of the receipts of his office, $10,000 for each year's services, and is to turn over any excess, beyond that amount, to the city treasurer for the use of the city.

Certain penalties are also provided for breaches of the law.

The above is a bare outline of the act, but it will be sufficient for present purposes. The statute is a public one and its precise terms are readily accessible.

The appellant questions its validity on two grounds.

1. *First*, it is attacked as in conflict with section 12 of article 9 of the constitution of 1875, viz.:

"*County officers, fees of.*—The general assembly shall, by a law uniform in its operation, provide for

and regulate the fees of all county officers, and, for this purpose, may classify the counties by population.''

But a glance at the act in question will satisfy one that it does not purport to establish any scale of fees receivable by the sheriff. It limits the total amount of compensation which he may retain from his fees, in accordance with the command of section 13 of article 9.

The fees of the office of sheriff were regulated by general laws (R. S. 1879, secs. 5606 and following), at the time the fees in dispute were earned, just as such fees are now governed by statutes (Laws, 1891, pp. 145 and following), which are general in nature, within the definition of the constitutional language last above quoted.

The act shows on its face that it is designed to enforce the next following section (13) of the same article. If it is proper legislation for that purpose, it should be sustained.

For it is the duty of the court to favorably view all enactments of the legislature. No act should be declared unconstitutional if it be fairly open to a construction which will harmonize it with the organic law.

2. But it is insisted that the act is a special or local law, and clashes with the familiar commands of the fundamental state charter on that point.

The title of the act is frank enough to confine the operation of the latter to the city of St. Louis. It bears only on one general subject, namely, the compensation of the sheriff in that city. It makes no attempt to cover its true design with any of the formal paraphernalia sometimes put on to herald a mere nominal compliance with the constitution. If the act is sustainable, the form in which it is drawn is rather to be commended for its candor than condemned on that account.

The constitution, by section 13 of article 9, provides as follows:

"*Fees of county or city officers, limit—quarterly returns.* The fees of no executive or ministerial officer of any county or municipality, exclusive of the salaries actually paid to his necessary deputies, shall exceed the sum of $10,000 for any one year. Every such officer shall make return, quarterly, to the county court of all fees by him received, and of the salaries by him actually paid to his deputies or assistants, stating the same in detail, and verifying the same by his affidavit; and for any statement or omission in such return, contrary to truth, such officer shall be liable to the penalties of willful and corrupt perjury."

The organic law also provides that "the general assembly shall pass all such laws as may be necessary to carry this constitution into full effect." (Sec. 15 of Schedule, Const., 1875.)

The latter section was inserted rather from excess of caution than from need; for its terms, no doubt, would have been implied as part of the other provisions of the instrument.

It is a maxim of interpretation that a grant of power (especially of the kind contained in an instrument of such large features as a state constitution) includes all those incidental powers which are essentially needful to make the principal grant effective. Broom's Legal Maxims [8 Am. Ed.], **pp. 479, 486.

The declaration of a limit of compensation, by section 13 of article 9, is very plainly one which is to some extent operative by its own force. But yet all the objects of the section can not be fully reached without some legislation.

It is idle to speak of limiting the compensation of an officer to a certain amount of his fees without providing (for instance) for a disposition of the surplus of

his receipts, and for some system of accounting, by which such surplus can be ascertained.

To omit any enactment in aid of the purposes of the section would simply mean to leave the fees with the officer who had received them (whatsoever their amount), and thus defeat the mandate of the paramount law.

Hence the need of some such legislation as that before us.

A similar law exists as to the greater part of the state, by the terms of which, the county is made the beneficiary of any surplus there may be, over the prescribed limit of the receipts of the officers mentioned. R. S. 1889, sec. 5023; Laws, 1891, p. 156, sec. 44.

The last half of section 13 of article 9 of the constitution prescribes some steps toward an accounting, applicable to counties proper; but its language shows that it is wholly inapplicable to the city of St. Louis, since its separation from the county in accordance with the authority of the organic law itself (art. 9, secs. 20 to 25).

Yet it was eminently just and proper to bring the city of St. Louis within reach of section 13, limiting the salaries of the officers therein specified.

To do that, it was necessary to legislate in view of the unique situation in which the city was left by its separation from the county, as described by the constitution (art. 9, sec. 23). No county court any longer existed in the city (Const., art. 9, sec. 24; "Scheme," sec. 2, R. S. 1889, p. 2074). Its powers were distributed among a variety of officers. On some subjects the mayor, council or municipal assembly acted in its stead (R. S. 1889, p. 2160, sec. 18, and secs. 7695, 7714; "Scheme," secs. 24 and 34, R. S. 1889, pp. 2081, 2083); on other subjects, the recorder of voters

was substituted (Laws, 1883, p. 43, sec. 18, and p. 46, sec. 26).

The act under review imposes the duty of supervising the necessary accounts (in order to ascertain the constitutional limit of the sheriff's compensation) upon the circuit court in general term in the city of St. Louis.

The constitution is positive authority for investing that court with such duties, by express language of section 27 of article 6. *State ex rel. v. Tolle* (1880), 71 Mo. 648. In the absence of a county court, the circuit court in general term was as suitable a tribunal for auditing such accounts, rendered by one of its own officers, as could well have been chosen.

As the constitution sanctioned the imposition of such a duty upon that court, no objection can be urged to the mode prescribed by the act to ascertain the sheriff's compensation.

It was ruled in the case of *Ewing v. Hoblitzelle* (1884), 85 Mo. 64 (in dealing with the act of 1883 establishing the office of recorder of voters) that "no law can be either local or special, within the meaning of the constitution, which results (as does the act of 1883), directly or indirectly from a specific constitutional requirement."

The same principle was recognized and applied in *State ex rel. v. Higgins* (1894), 125 Mo. 364 (28 S. W. Rep. 638); and has been approved in other cases. *State ex rel. v. Hughes* (1891), 104 Mo. 459 (16 S. W. Rep. 489); *State ex rel. v. Yancy* (1894), 123 Mo. 391 (27 S. W. Rep. 380).

Legislation which is necessary or appropriate to carry into effect a positive command of the organic law, or is required or directly contemplated by its terms, can not justly be held to be either special or local within the true intent and meaning of the constitution.

Legislation of that description is, indeed, merely the machinery to put the constitution into full force. It was evidently so regarded by the framers of that instrument when they inserted an express sanction of such legislation in section 15 of the "Schedule," the chief aim of which was to provide for the practical application of the new instrument.

In respect of topics of that sort, the legislature has the undoubted power to adopt such form of action as the particular subject appears in its judgment to demand, unless the constitution itself puts some restriction on that power, which is not the case in this instance.

The "Scheme" of separation of the city and county of St. Louis, moreover, contemplated that legislation on the topic of the act now before us would be needed to give the constitution its full effect in its bearing on the compensation of public officers in St. Louis, for it is declared in the "Scheme" that the sheriff of the city, and certain other officers named, "shall receive the same compensation allowed said officers of St. Louis county prior to the adoption of this scheme, until otherwise provided by law." (R. S. 1889, p. 2076, sec. 5.)

It was seen then that such legislation would be requisite to enforce the provisions of section 13 of article 9 of the constitution; and the appropriate statute (now before us) followed accordingly, in a few years after the organic law was adopted.

We consider that it was fully warranted by the constitution, under the principles above declared, and that its subject-matter exempts it from condemnation as special or local.

Under a constitution such as the present one of Missouri, the nature of the subject dealt with by a given statute, as well as the form in which it is couched, may

often determine whether the enactment is good or bad.

The act before us is no mere amendment or regulation of the powers of local government as was the case in *Murnane v. St. Louis* (1894), 123 Mo. 479 (27 S. W. Rep. 711), wherein a statute in regard to street improvements was held unconstitutional because a special law. The act here in consideration rests upon its obvious connection with the organic law itself as a necessary measure to give effect to the manifest purposes of that document, and hence plainly authorized by it. As such a measure the act is good, and should be obeyed and respected accordingly.

The same act was before this division in *Harrington v. St. Louis* (1891), 107 Mo. 327. It was then assumed that it was constitutional. A judgment was based upon it; and some of the remarks in the course of that opinion indicate that the learned writer of the latter took the same view of its validity which we now confirm after a full argument upon the subject.

We conclude that the act is valid, and accordingly affirm the judgment of our learned brother on the circuit bench, who preceded us to the same conclusion, and furnished some valuable points in elucidation of the merits of the controversy by the memorandum he filed in giving judgment. BRACE, C. J., and MACFARLANE and ROBINSON, JJ., concur.