MELVIN C. LEFMAN, Jailer of City of St. Louis, v. ANTON SCHULER, Sheriff of City of St. Louis, Appellant.—296 S. W. 808.

Court en Banc, June 27, 1927.

1. **JAIL IN CITY OF ST. LOUIS: Control by Sheriff or Jailer.** Under the Constitution and statutes of the State and the charter and ordinances of the city of St. Louis, the city jail is not under the control or superintendence of the sheriff, but is under the control and management of the jailer, appointed by the mayor, and the sheriff has no legal authority to appoint the jailer or to invade the jail with intent forcibly to expel the jailer or his subordinates or to interfere with the jailer in the discharge of his duties.

2. **SPECIAL LAW: Enacted Prior to Adoption of Constitution: Repeal: Sheriff and Jailer of St. Louis County: Conflict with General Statute.** The provisions of the Constitution relating to special laws were designed to have a prospective operation only, and do not purport to repeal any existing law, and therefore the Act of 1866, providing that the County Court of St. Louis County shall have entire control and superintendence of the county jail and shall prescribe all needful and proper rules and regulations for the government and management thereof and treatment of prisoners therein confined, and the appointment of a jailer therefor, being a valid law at the time of its enactment and never repealed, was continued in force after the adoption of the Constitution of 1875, and the Scheme of Separation and Charter of the City of St. Louis of 1876, adopted by and under the authority of the Constitution, had the effect of transferring the powers of the county court expressed in said act to the municipal assembly of the city, and said power thus vested in the municipal assembly it exercised by the enactment in 1877 of Ordinance No. 10388, establishing the office of jailer, to be appointed by the mayor, and providing that the jailer shall have under his control and superintendence the jail, the deputy jailer and guards, and with the advice and consent of the mayor, shall prescribe all needful and proper rules and regulations for the government and management thereof and the treatment of prisoners therein; and said ordinance was continued in force, after the adoption of the Charter of 1914, by the enactment of the Revised Code of 1914, and is not invalid because conflicting with the general statute (Sec. 12551, R. S. 1919) providing that "the sheriff of each county shall have the custody, rule, keeping and charge of the jail within his county, and of all prisoners in such jail, and may appoint a jailer under him, for whose conduct he shall be responsible."

3. ———: **Applicable to St. Louis Alone: Scheme and Charter: Sheriffs.** While the Constitution created the office of sheriff, it in no wise prescribed his duties; on the contrary, the Constitution, in providing for a scheme of separation of the city of St. Louis from St. Louis County, clearly recognized that special laws may be necessary to meet the conditions in the city; and the Scheme of Separation, and ordinances adopted thereunder providing for the custody, control and management of the common jail and the appointment of a jailer by the mayor, are not in conflict with the provisions of the Constitution prohibiting the General Assembly from enacting local or special laws.

**4. SPECIAL LAW: Long Acquiescence.** The acquiescence of the law-making bodies for eighty-four years in the custody and control by the jailer of the jail of the city of St. Louis, and in the exclusion during all that period of the sheriff from all control or management of it, is entitled to special consideration in determining the right of the sheriff to take possession of it.

---

Corpus Juris-Cyc. References: **Constitutional Law,** 12 C. J., Section 80, p. 722, n. 56; Section 222, p. 794, n. 25; p. 797, n. 34, 35, 38; Section 389, p. 886, n. 35; Section 390, p. 887, n. 38. **Jailer,** 33 C. J., p. 832, n. 34. **Prisons,** 32 Cyc., p. 318, n. 25, 32. **Statutes,** 36 Cyc., p. 991, n. 88; p. 992, n. 89; p. 1001, n. 24; p. 1015, n. 69; p. 1093, n. 19; p. 1140, n. 64.

Appeal from Circuit Court of City of St. Louis.—*Hon. Henry A. Rosskopf,* Judge.

---

AFFIRMED.

*Ernest A. Green* and *Oliver T. Remmers* for appellant.

(1) The jail is maintained, not by virtue of a municipal function of the city, but in the performance of a county function. Babcock v. Hahn, 175 Mo. 136; State ex rel. v. Bus, 135 Mo. 337; Cunningham v. St. Louis, 96 Mo. 53. (2) The sheriff is jailer *ex officio* and has a common-law right to the custody and control of the common jail and the prisoners confined therein. And statutes in derogation of the common law are to be so construed as not to infringe upon the principles of the common law. Beach v. John Finn, 4 Mo. App. 347; 32 Cyc. 320; 35 Cyc. 1533; 21 R. C. L. 1172; State v. Clinton, 67 Mo. 380; Boylan v. Steamboat Victory, 40 Mo. 245, 253; Thompson v. Union, 77 Mo. 520; Jackson v. Ry. Co., 87 Mo. 422; 28 Cyc. 535. (3) The office of sheriff is a constitutional one. And the Constitution only permits large cities to frame their own charters, consistent with and subject to the Constitution and laws of the State. Sec. 10, Art. IX, Mo. Constitution; State ex rel. v. Finn, 4 Mo. App. 347; Secs. 16, 23, 25, Art. IX, Mo. Constitution. (4) The general laws of the State provide that the sheriff shall have the custody, rule, keeping and charge of the jail within his county. Secs. 12549, 12551, 12552, 12566, 12567, 12573, R. S. 1919. (5) The Constitution of 1875, when it went into effect, repealed all laws and ordinances inconsistent therewith. State ex rel. Kreiter v. Straat, 41 Mo. 58; Deal v. Mississippi Co., 107 Mo. 464; French v. Woodward, 58 Mo. 66; Mayor v. Trigg, 46 Mo. 288; Kern v. Legion of Honor, 167 Mo. 471; Blodgett v. Schafer, 94 Mo. 672; St. Jos. & I. Ry. v. Cudmore, 103 Mo. 636; K. C. Ft. S. & M. Ry. v. Thornton, 152 Mo. 570. (6) A statute should be construed so as to render another statute meaningless only where the Legislature clearly expressed such intention, and statutes seemingly in conflict should be harmonized if possible. Columbia National Bank v. Davis, 284 S. W. 464. (7)

There must be uniformity in the operation of laws. Art. IX, sec. 12, Constitution of Missouri; State ex rel. v. Bailey, 272 S. W. 921. (8) Local and special laws are prohibited. Sec. 53, Art. IV, Constitution of Missouri; Henderson v. Koenig, 168 Mo. 356; Missouri Poultry & Game Co. v. Nolte, 203 S. W. 956; Barker v. Koeln, 192 S. W. 748; United Rys. v. Public Serv. Com., 192 S. W. 958; Kansas City v. Field, 194 S. W. 39. (9) Any special legislative act, any charter or ordinance attempting to give a municipal officer or employe the custody, rule or keeping of the common jail is in violation of: Secs. 10, 16, 23, 25, Art. IX, and Sec. 53, Art. IV, and Sec. 12, Art. XII, Mo. Constitution.

*Julius T. Muench* and *Charles J. Dolan* for respondent.

(1) In 1841 the Eleventh General Assembly conferred upon the county court of St. Louis County authority to appoint the jailer of St. Louis County. The effect of this act was to deprive the sheriff of St. Louis County of the custody and control of the jail of that county. Laws 1841, pp. 302, 303. (2) The power taken from the sheriff by the Act of 1841 has not been restored to him by any act of the General Assembly, or by any provision of the Scheme of Separation between the city and the County of St. Louis. (3) When the city was separated from the County of St. Louis in 1876, under authority of the Constitution, the city of St. Louis thereupon became a county and the municipal officers of the city became charged with the performance of county functions in addition to the performance of municipal functions. The power conferred upon the county court by statute to appoint a jailer of the county jail was transferred to the mayor of the city of St. Louis, who became a county officer by virtue of the separation of the city from the county, and the general custody and control of the jail were vested in the municipal assembly. Mo. Constitution, art. 9, secs. 20 to 25; Scheme of Separation, secs. 10, 24; Charter of 1876, art. 4, secs. 2, 9; State ex rel. Beach v. Mason, 4 Mo. App. 379. (4) The ordinance of the city, under authority of which respondent has been appointed to the position of jailer of the city, is a valid ordinance, passed in accordance with the provisions of the Scheme of Separation. Charter of 1914, art. 13, sec. 14 (d); Scheme of Separation, secs. 10, 24; Revised Code 1914, secs. 1933-1940. (5) The special laws providing for the appointment of the jailer of St. Louis County were constitutional and valid. State ex rel. Robbins v. County Court of New Madrid, 51 Mo. 82. (6) The provisions of the Scheme of Separation took the place of and superseded all special laws relating to St. Louis County inconsistent with the said Scheme. Constitution of Missouri, art. 9, sec. 20.

PER CURIAM:—This cause came here upon appeal from the Circuit Court of the City of St. Louis. After careful consideration, we have adopted as the opinion of this court the able and conclusive opinion written by the trial judge, Honorable Henry A. Rosskopf. We quote said opinion in full. To avoid confusion, we have dispensed with the customary quotation and intraquotation marks, except as employed by Judge Rosskopf. His opinion follows:

This is an action by the plaintiff against the Sheriff of the City of St. Louis, praying that the defendant and all persons working under, for, through and at his direction, in any capacity whatsoever, be permanently restrained from invading, or undertaking to invade, the jail of the city of St. Louis, with intent forcibly to expel plaintiff or his subordinates from said jail, and from interfering with plaintiff in the discharge of his duties as jailer in said city.

The defendant has filed his return to the order to show cause and answer to plaintiff's second amended position. To this return and answer plaintiff has filed a general demurrer.

The question to be determined in the last analysis is whether the common jail of the city of St. Louis should be in charge and control of the jailer of the city of St. Louis or the Sheriff of the City of St. Louis.

This cause was submitted on the pleadings and on its merits, so that a final judgment might be entered.

The plaintiff claims that the Board of Aldermen has entire control and superintendence of the jail and its management, with power to provide for the appointment of a jailer, by virtue of the Scheme of Separation adopted in 1876, under authority conferred by certain provisions of the Constitution of Missouri of 1875, certain ordinances passed by the Municipal Assembly of the City of St. Louis after the approval of the Scheme of Separation and Charter, and certain legislative enactments passed by the General Assembly of Missouri in 1877 and 1879. The defendant, on the other hand, claims the same right as sheriff, and bases his contention on certain provisions of the general laws of Missouri, and that the special laws vesting this power in the Municipal Assembly are in conflict with the Constitution of 1875, and therefore invalid.

In order to get a comprehensive view of the situation existing at the time the Scheme of Separation was adopted in 1876 it might be well to cite briefly the several theretofore existing laws touching upon the control of the jail, at that time the common jail of the County of St. Louis, which included the city of St. Louis.

The first law affecting the rights of the sheriff in so far as depriving him of the control of the common jail is concerned, was passed by the Eleventh General Assembly in 1841 (See Laws 1841, pp. 302 and 303), wherein the Legislature provided for the appointment of a jailer of the County of St. Louis, the effect thereof being

to deprive the sheriff of that charge and control theretofore vested in him. This law of 1841 continued in force and effect until the year 1851, when the General Assembly of Missouri passed another law respecting said jailer of St. Louis County (See Laws 1851, p. 307), wherein it was provided that the jailer of the County of St. Louis be elected by the qualified voters of said county at each general election. The said law of 1851 continued in force and effect until 1866, at which time the General Assembly provided that the County Court of St. Louis County shall have entire control and superintendence of the county jail, and its management, and shall prescribe all needful and proper rules and regulations for the government and management thereof and treatment of the prisoners therein confined, not inconsistent with the provisions of the general laws of Missouri concerning jails and jailers, and providing for the appointment of a jailer for said jail by the county court. [Laws Adj. Sess. 1865-66, 23rd General Assembly, pp. 276-278, approved February 27, 1866.] Upon the expiration of the term of office of the then jailer the county court appointed his successor, in accordance with said law, and thereafter, until the 22nd day of October, 1876, said jailer of the County of St. Louis was appointed at regular and proper intervals by said county court.

Said law of 1866, if valid, was still in force and effect in 1876, when the Scheme of Separation of the city of St. Louis from the County of St. Louis was ratified by the voters of said city and county, and the Charter of 1876 of said city was ratified.

It thus appears that for a period of thirty-five years preceding the separation of St. Louis City from St. Louis County the sheriff of said county had no control or superintendence over the county jail, and that a jailer, either appointive or elective, had been provided for during all of that time.

It also appears that the Scheme of Separation and said Charter of 1876 were adopted under and by virtue of authority conferred by Section 20 of Article IX of the Constitution of Missouri adopted in 1875, and said scheme and charter became effective on or about the 22nd of October, 1876, thereby superseding all special laws relating to the County of St. Louis inconsistent with the provisions of said Scheme of Separation.

Section 20 of Article IX of the Constitution of Missouri provides as follows:

"The city of St. Louis may extend its limits so as to embrace the parks now without its boundaries, and other convenient and contiguous territory, and frame a charter for the government of the city thus enlarged, upon the following conditions, that is to say: The council of the city and county court of the county of St. Louis shall, at the request of the mayor of the city of St. Louis, meet in joint session and order an election, to be held as provided for general elec-

tions, by the qualified voters of the city and county, of a board of thirteen freeholders of such city or county, whose duty shall be to propose a scheme for the enlargement and definition of the boundaries of the city, the reorganization of the government of the county, the adjustment of the relations between the city thus enlarged and the residue of St. Louis county, and the government of the city thus enlarged, by a charter in harmony with and subject to the Constitution and laws of Missouri, . . . and if a majority of such qualified voters, voting at such election, shall ratify such scheme and charter, then such scheme shall become the organic law of the county and city, and such charter the organic law of the city," etc.

Section 10 of the Scheme of Separation provided as follows:

"All of the public buildings, institutions, public parks, and property of every character and description heretofore owned and controlled by the county of St. Louis, within the limits as extended, including the court house, the county jail, the insane asylum and the poor house, are hereby transferred and made over to the city of St. Louis, and all the right, title and interest of the county of St. Louis in said property, and in all public roads and highways within the enlarged limits, is hereby vested in the city of St. Louis, and divested out of the county; and in consideration of the city becoming the proprietor of all the county buildings and property within the enlarged limits, the city hereby assumes the whole of the existing county debt, and the entire park tax; and the municipal assembly shall, as soon as practicable after the adoption of this scheme and charter, provide by ordinance for the management of the property and public institutions hereby placed under its charge."

Section 24 of said Scheme of Separation further provided: "The municipal assembly shall have power within the city of St. Louis to do all acts and perform all functions not otherwise provided for in this charter and not inconsistent with its terms, which have heretofore been done and performed by the county court of the county of St. Louis."

In 1877, and after the separation of the city from the County of St. Louis, the General Assembly of Missouri enacted the following law:

"Sec. 1. The sheriff of the city of St. Louis shall do and perform all acts and duties prescribed by general and special laws applicable to the sheriff of St. Louis County which were in force at the time of the adoption of the scheme and charter, except in such cases as are inconsistent with some provision of said scheme and charter." [Laws 1877, p. 188, approved May 2, 1877.]

After the adoption and ratification of the Scheme of Separation and Charter the Municipal Assembly of the City of St. Louis enacted ordinance No. 10338, approved July 31, 1877, and which provided as follows:

"Sec. 1. There is hereby established the office of jailer of the city of St. Louis. Said jailer to be appointed by the Mayor and approved by the Council and to hold his office for four years," etc.

Said ordinance No. 10338 further provided that said jailer shall have under his control and superintendence the jail, the deputy jailer and guards, and shall, with the advice and consent of the mayor, prescribe all needful and proper rules and regulations for the government thereof and the treatment of the prisoners therein confined. Said ordinance further provided for the manner in which supplies and necessaries were to be obtained, the assignment of quarters for the jailer, for the official bond of the jailer, the appointment and compensation of employees of the jailer, and that said jailer shall do and perform the acts and duties theretofore discharged by the jailer of St. Louis County, and to be responsible for the management of the jail and the custody and care of all prisoners.

In 1914 a new city charter was adopted by the voters of St. Louis, superseding the charter adopted in 1876 and all special laws inconsistent therewith, in accordance with Section 22 of Article IX of the Constitution of Missouri.

It appears that the provision of the Charter of 1876 authorizing the mayor to appoint the jailer of city of St. Louis was omitted from the 1914 charter, and there was substituted therefor a provision placing all the detentive, penal and corrective institutions of the city under the special charge and supervision of a Division of Correction, under the control of the Department of Public Welfare, the head of which was to be known as the Director of Public Welfare, said charter provision being Subdivision D of Section 14, Article XIII.

Thereafter the Board of Aldermen enacted an ordinance of the city of St. Louis, numbered Ordinance No. 30013, approved April 12, 1918, embodying a revision of all the ordinances of the city, which ordinance became known as the Revised Code of the City of St. Louis 1914, or as the General Ordinances, and Sections 1933 to 1940 thereof were, in effect, an amendment of old Ordinance No. 10338, approved July 31, 1877, to conform to the provisions of the Charter of 1914.

Said Sections 1933-40 provided that the office of jailer of the city of St. Louis is hereby continued, also for the appointment of said city jailer by the Director of Public Welfare, also that said jailer shall have under his control and superintendence the jail, deputy jailer and guards, and shall, with the advice and consent of the mayor, prescribe all needful and proper rules and regulations for the government and management thereof, and the treatment of the persons therein confined, not inconsistent with the provisions of the general laws of the State or charter of the city concerning jails and jailers. Also, that the jailer appointed under this chapter shall do and perform all the acts and duties heretofore discharged by the

jailer of St. Louis County, also holding him responsible for the management of the jail, the care and custody of all prisoners and property, and that the collection of any money made by him was to be deposited in the city treasury.

The Charter of the City of St. Louis of 1876, Article 4, Section 2 thereof, vested in the mayor of the city of St. Louis authority to appoint the jailer, and provided further that such appointment by the mayor be confirmed by the council.

This Legislature again, in 1879, considered this subject-matter (See Laws 1879, p. 39, approved May 1, 1879), wherein they provided as follows:

"All the general laws relating and applicable to the sheriffs and coroners of the several counties of this State shall apply to the same officers in the city of St. Louis, and all special laws applicable to the sheriff, marshal and coroner of St. Louis County, as organized before the separation of the city and county of St. Louis by the adoption of the Scheme of Separation, shall still apply to the sheriff and coroner in the city of St. Louis," etc.

The title to said Act of 1879 was: • "An Act to amend Section 1 of an Act entitled 'An Act to define and conform the laws of the State to Section 23 of Article IX of the Constitution,' Approved May 2, 1877."

The foregoing is a resume of the laws upon which the plaintiff as jailer of the city of St. Louis bases his right to the control and custody of the city jail. The sheriff, however, contends that said laws are unconstitutional and void as being in conflict with the provisions of the Constitution of 1875 prohibiting special and local laws, and bases his right and claim to the control of the city jail upon the following provisions:

Section 12551, Revised Statutes 1919, a part of Article XXIII, known as the Jail and Jailers Act, as follows:

"The sheriff of each county in this state shall have the custody, rule, keeping and charge of the jail within his county, and of all prisioners in such jail, and may appoint a jailer under him, for whose conduct he shall be responsible; but no justice of the peace shall act as jailer, or keeper of any jail, during the time he shall act as such justice." •

Said section in practically this form has been on the statute books since 1824 or 1825.

Section 5 of the Scheme of Separation of 1876 provided for an election to be held in November, 1876, and every two years thereafter, for a sheriff of the city of St. Louis.

Section 18 of said Scheme provided as follows:

"The sheriff of the city of St. Louis shall, within the limits of said city, exercise the authority now vested by law in the sheriff of the county of St. Louis, and after this scheme shall go into oper-

ation, all writs and other process which are now by law provided to be executed by the sheriff of the county of St. Louis, within the city limits, shall be directed to and executed by the sheriff of the city of St. Louis. The city marshal, after this scheme goes into operation, in addition to the duties now required by law to be performed by him, shall, within the city limits, exercise the same power and perform the same duties as are now provided by law in regard to the county marshal. And the sheriff of St. Louis county shall execute all process directed or delivered to him by any court of record of the county of St. Louis, as are now established by law.''

Section 10 of Article IX of the Constitution of Missouri of 1875 provides for the election by the qualified voters of each county of a sheriff and coroner, providing for the term of office, and further providing for a bond for the official performance of his duties. This section does not define the duties or powers of the sheriff.

Section 16 of said Article IX of the Constitution of Missouri of 1875 provides how large cities may frame their own charters. This section evidently has no reference whatever to St. Louis, as it refers to cities of more than 100,000 inhabitants, whereas Section 20 of said article specifically provides how the city of St. Louis might extend its limits and frame its own charter.

Section 23 of Article IX of the Constitution of Missouri of 1875 provides that any charter adopted must be in harmony with and subject to the Constitution and laws of Missouri. This section of the Constitution evidently applies to charters to be adopted by the city of St. Louis subsequent to the one provided for by Section 20 of said article.

Section 25 of Article IX of said Constitution provides as follows: ''Notwithstanding the provisions of this article, the General Assembly shall have the same power over the city and county of St. Louis that it has over other cities and counties of this State.''

Section 53 of Article IV of the Constitution of Missouri of 1875 provides that:

''The general Assembly shall not pass any local or special law . . . creating offices, or prescribing the powers and duties of officers in counties, cities, townships, election or school districts; . . . regulating the practice or jurisdiction of, or changing the rules of evidence in, any judicial proceeding or inquiry before courts, justices of the peace, sheriffs, commissioners, arbitrators; . . . legalizing the unauthorized or invalid acts of an officer or agent of the State, or of any county or municipality thereof. In all other cases where a general law can be made applicable, no local or special law shall be enacted; and whether a general law could have been made applicable in any case is hereby declared a judicial question, and as such shall be judicially determined, without regard to any legislative assertion on that subject. . . . Nor shall the General

Assembly indirectly enact such special or local law by the partial repeal of a general law; but·laws repealing local or special acts may be passed."

It would appear that it was manifestly the intention of the framers of the Constitution of 1875, in enacting Section 20, Article IX, thereof, that the people of St. Louis County, which at that time included St. Louis City, should be permitted, by means of the Scheme of Separation, to create an organic law for said city and county reconciling the laws existing at that time applicable to St. Louis County only. If this be true, it becomes important to determine whether the law of 1866, providing for the appointment of a jailer for the county jail by the county court, was valid under the Constitution of 1865. A similar question was disposed of in the case of State ex rel. Robbins v. County Court of New Madrid, 51 Mo. 82, from which the following syllabus is quoted, said syllabus being fully supported by the opinion:

"The act 'to authorize the county courts of Madison, Wayne and other counties to levy a special tax for the purpose of paying the debts of said counties,' is not in conflict with Section 27, Article IV, of the State Constitution, which provides that 'the General Assembly shall pass no special law for any case for which provision can be made by general law.' The question whether any given case can be provided for by a general law, or whether a special law is necessary, is a question solely for the Legislature to settle, and cannot be determined by the Supreme Court."

Following the doctrine laid down in the New Madrid County case, it follows that the Legislature was the only body to determine whether such special law was necessary, and having so determined by its enactment, it does not lie for this court or any other court to say that said act was unconstitutional on that ground.

It is also urged that even though the Act of 1866 was valid under the Constitution of 1865, it became invalid upon the adoption of the Constitution of 1875, which also provided against the passage of special or local laws by the General Assembly, and that whether a general law could be made applicable where a special or local law was sought to be enacted was declared to be a judicial question.

But our Supreme Court, in the case of State ex rel. Harrison v. Frazier, 98 Mo. l. c. 429, in passing upon the validity of a special law enacted before the Constitution of 1875 was adopted, used this language:

"The charter of Rolla is a special law enacted at a time when such legislation was constitutional. It is declared by its terms to be a public act and receivable in evidence without further proof. This authorizes all courts to take judicial notice of its contents.

"Defendants insist that the State Constitution, adopted in 1875, repealed that part of the charter of Rolla requiring the registration

of voters at city elections. The Constitution defines the qualifications of voters, making no reference to registration as one of them. [Art. 8, sec. 2.] It then declares that 'the General Assembly shall provide, by law, for the registration of all voters in cities and counties having a population of more than one hundred thousand inhabitants, and may provide for such registration in cities having a population exceeding twenty-five thousand inhabitants and not exceeding one hundred thousand, but not otherwise.' [Art. 8, sec. 5.] By another section it is made clear that cities having special charters were not intended to be deprived of them by the adoption of the Constitution merely, without supplemental legislation to that effect. [Const., art. 9, sec. 7.]

"The terms of a special law are not ordinarily regarded as repealed by a later law of a general nature on the same subject. To thus effect a repeal such an intent must be clearly manifested in the latter. The constitutional declaration regarding the power and duty of the General Assembly, in respect of the registration of voters, is, by its terms, evidently designed to have a prospective operation only. It does not purport to repeal any existing law such as is here under discussion. Nor do we think any such purpose can be fairly inferred from its language, especially when we consider that, unless such an intent is evident beyond reasonable question, we should assume as a rule of construction that only a prospective operation of the Constitution was contemplated."

Again, in the case of State ex rel. v. Cape Girardeau Railroad, 48 Mo. 468, 471, the court said that the clause of the Constitution of 1865 prohibiting special legislation was obviously intended to have a prospective operation and to apply only to laws passed after the adoption of the Constitution.

Again, in the case of State ex rel. McDaniel v. Schramm, 272 Mo. l. c. 564, in speaking of the validity of local laws, Judge FARIS used the following language:

"The numerous (and largely pestiferous) broods of special or local laws which were passed before the present Constitution was adopted, were not necessarily abrogated by that instrument. As a matter of fact but few of them were so nullified, and these few by virtue of the provisions of Section 1 of the Schedule to the Constitution, for that they were inconsistent with the provisions of that instrument. [State to use of Ramming v. Lumber Co., 170 Mo. 7.] By far the great majority of such laws continued in force by express permission of Section 1 of the Schedule, supra, till they were repealed expressly or by the clearest implication, and many of these special laws are still in full force and vigor. Barring the effect upon such laws of Section 11 of the Schedule, the Constitution operated upon them prospectively only. It forbids the passage in divers matters and cases of any more special laws (Sec. 53, art. 4, Constitu-

tion), but it exercised no more potency in the repeal of an existing special law than it did in the repeal of a general law. Both continued in full force and effect, till they were repealed, unless they were in conflict with the Constitution.''

The three cases cited by defendant in support of his position that the law of 1866, providing for a jailer for the St. Louis County jail, became invalid upon the adoption of the Constitution of 1875, are not in point and do not involve the effect of the Constitution upon local laws passed prior to its adoption. The case of State ex rel. Harrison v. Frazier, supra, has not been expressly overruled, but is cited with approval in the case of State ex rel. McDaniel v. Schramm, supra.

I am inclined to the opinion that the Scheme of Separation adopted in 1876 by and under authority of Section 20 of Article IX of the Constitution of 1875 had the effect of transferring the powers of the county court to the Municipal Assembly of the City of St. Louis in respect to all matters and things taken over by the city in the separation which had theretofore been under the control, superintendence and management of the county court, and if the law of 1866, vesting the control of the county jail in the county court, with power to appoint the jailer, was valid, as I am inclined to think it was, then it follows that that same power was properly vested in the Municipal Assembly which exercised its authority by enacting Ordinance No. 10338, approved July 31, 1877.

The precise question involved in the case at bar has not been passed upon by our appellate courts. However, in the case of Kenefick v. City of St. Louis, 127 Mo. 1, a somewhat similiar question was at issue. This was a case to test the validity of an act regulating the compensation of the sheriff of the city of St. Louis, approved May 19, 1879. In that case the court said, on page 10:

''Legislation which is necessary or appropriate to carry into effect a positive command of the organic law, or is required or directly contemplated by its terms, cannot justly be held to be either special or local within the true intent and meaning of the Constitution.

''Legislation of that description is, indeed, merely the machinery to put the Constitution into full force. It was evidently so regarded by the framers of that instrument when they inserted an express sanction of such legislation in Section 15 of the 'Schedule,' the chief aim of which was to provide for the practical application of the new instrument.

''In respect of topics of that sort, the Legislature has the undoubted power to adopt such form of action as the particular subject appears in its judgment to demand, unless the Constitution itself puts some restriction on that power, which is not the case in this instance.

''The 'Scheme' of separation of the city and county of St. Louis, moreover, contemplated that legislation on the topic of the act now

before us would be needed to give the Constitution its full effect in its bearing on the compensation of public officers in St. Louis, for it is declared in the 'Scheme' that the sheriff of the city, and certain other officers named, 'shall receive the same compensation allowed said officers of St. Louis county prior to the adoption of this scheme, until otherwise provided by law.'

"It was seen then that such legislation would be requisite to enforce the provisions of Section 13 of Article 9 of the Constitution; and the appropriate statute (now before us) followed accordingly, in a few years after the organic law was adopted.

"We consider that it was fully warranted by the Constitution, under the principles above declared, and that its subject-matter exempts it from condemnation as special or local."

Also, in the case of State of Missouri ex rel. v. Mason, 4 Mo. App. 377, a somewhat similar question was involved affecting the validity of the Scheme of Separation adopted in 1876, wherein the freeholders created the office of city marshal and providing certain duties and powers. In discussing this case the court used the following language on page 381 of said report:

"In St. Louis County, since the act of 1841, the Sheriff of St. Louis County has attended the circuit court and executed the process; while the Marshal of St. Louis County has attended the St. Louis Criminal Court, the Probate Court, and, since its establishment, the Court of Criminal Correction, and executed the process of those courts.

"The freeholders, in one form or another, undertook to provide that a city officer, the marshal, should attend upon and execute the process of the St. Louis Criminal Court, the Court of Criminal Correction, and the Probate Court.

"In pursuance of the powers given them by the Constitution, the freeholders provided that the city marshal should execute the process of these courts. The Legislature had many years before taken certain functions from the Sheriff of St. Louis County and vested them in a county marshal, and it would hardly be claimed that the Legislature had not power to do this."

In this same case, on page 381 thereof, the court also declares that the duties of the sheriff are in no wise prescribed by the Constitution of the State, indicating clearly that while the office of sheriff may be an office created by the Constitution, nowhere did the Constitution ever provide for his duties.

I am aware that special or local laws are not looked upon with favor by our courts, but we cannot lose sight of the fact that our courts have repeatedly sustained laws of such a character, the following being a few of the special laws upheld as not being in conflict with the Constitution as special legislation or local laws: The Juvenile Court Act—Ex parte Loving, 178 Mo. 194; Registration and

Election Law—State ex rel. v. Mason, 155 Mo. 486; Metropolitan Police Act—State ex rel. v. Mason, 153 Mo. 23; Justices of the Peace and Constables Act—Spaulding v. Brady, 128 Mo. 653; Sheriff Act—Kenefick v. City of St. Louis, 127 Mo. 1; School Board Elections—State ex rel. v. Miller, 100 Mo. 439; Assessment for Public Improvements in accordance with Sec. 14, Art. VI, of Charter of 1876—Loth v. St. Louis, 257 Mo. 399.

It is also pertinent to observe that the subject of special legislation for St. Louis resulting from the separation of the city from the county was considered by the Legislature, as already indicated, by the Sheriff Act of 1877, providing for the duties of the sheriff in the city of St. Louis, and again, in 1879, where the precise subject-matter was again the subject of legislative inquiry and enactment.

It is evident from the Acts of 1877 and 1879 that the Legislature recognized that special conditions existed in St. Louis City calling for special laws necessary or appropriate in order to carry out the constitutional provision providing for a scheme of separation.

I am therefore of the opinion that the law of 1866, providing for the appointment of the jailer by the county court, and vesting the county court with the superintendence and control of the jail, was valid under the Constitution of 1865, and the question of whether said law was necessary and could not have been governed by the general laws was a question for the Legislature to determine, and not the court.

I am also of the opinion that the law of 1866 was a valid and subsisting law at the time the voters of St. Louis City and county adopted the Scheme of Separation, and that upon its adoption the powers of the county court were transferred to the Municipal Assembly in so far as the custody, superintendence and control of the common jail was concerned, and also that said Scheme of Separation and the ordinances adopted thereunder by the Municipal Assembly were not in conflict with the Constitution of 1875 prohibiting the General Assembly from enacting local or special laws.

It will be observed that for 84 years the custody and control of the jail of the city of St. Louis, and prior to the separation the County of St. Louis, has been in a jailer, a person other than the sheriff: also, that the sheriff during all of this period (since 1841 to 1925) has had absolutely no control or jurisdiction over said jail, and during all of said period the jailer's right to control and custody has never been questioned, although the Legislature has been in session every two years since 1876.

It may well be said here, as was said in the case of State ex rel. Barrett v. First National Bank, 297 Mo. l. c. 410; "It is a well established rule of construction that a long-continued interpretation of a statute by public officers charged with its execution, while not controlling upon the courts, is entitled to special consideration."

The various special laws herein referred to have been in force and effect for a long period, almost the life of Missouri's statehood. The presumption in favor of the constitutionality of a statute or legislative expression is very strong. The rule is laid down in Corpus Juris that unless a statute is shown to be unconstitutional "beyond a reasonable doubt, or unless it is plainly, palpably, manifestly and unequivocally in conflict with some constitutional provision," it will be upheld. [12 C. J. 794-798.] This rule is also supported by our own courts. See State v. Scullin-Gallagher, 268 Mo. 1. c. 182; State v. Bank, 252 Mo. 1. c. 30; State ex rel. v. Missouri University, 188 S. W. 128. See also other cases cited in Corpus Juris.

In this State and city all process and commitments affecting the custody of state prisoners, both before and after conviction, are directed to the sheriff, and he in the first instance takes charge of all such prisoners and thereafter places them in the said city jail. He is likewise required to have such prisoners before the court at the time of arraignment, trial and sentence. It would therefore appear that he would be the logical person to have charge of the city jail, but be this as it may, it is quite evident that the law-making power (namely, the General Assembly of Missouri, the voters of the city and county of St. Louis in adopting the Scheme of Separation by virtue of Section 20, Article IX, Constitution of 1875, and the Municipal Assembly of the city of St. Louis) has ordained otherwise.

I am of the opinion that the plaintiff is entitled to the relief sought in his petition.

From the adoption by this court of the foregoing opinion of Judge Rosskopf, it necessarily results that the judgment of the Circuit Court of the City of St. Louis should be affirmed. It is so ordered. All concur, except *Graves, J.,* who dissents.

### · ON MOTION FOR REHEARING.

PER CURIAM:—Appellant insists that Laws of 1841, page 302, and subsequent amendments, providing for the appointment by the County Court of St. Louis County of a jailer for said county, did not have the effect of repealing or modifying the provisions of the then existing general law relating to jails and jailers, particularly the then existing section, which was the same as Section 12551, Revised Statutes 1919. The latter section provides that "the sheriff of each county in this state shall have the custody, rule, keeping and charge of the jail within his county, and of all prisoners in such jail, and may appoint a jailer under him, for whose conduct he shall be responsible." It is the contention that the Act of 1841, and subsequent acts amending it, did not take away from the sheriff of St. Louis county the right to make the appointment of a jailer and did not transfer to the county court the right to appoint a jailer who

should have the custody, rule, keeping and charge of the jail in St. Louis County, to the exclusion of the sheriff.

It is contended that a general law cannot be repealed or modified by implication by a subsequent special law, unless the subsequent special act is so clearly in conflict with the existing general law that both cannot stand. That rule is well established, but, giving full recognition to that rule, we think, that the general law providing for the custody and keeping of the jail by the sheriff must be held to be superseded, in so far as St. Louis County is concerned, by the special acts referred to.

It is true that the Act of 1841 did not specify the duties of the jailer whose appointment was therein provided for. But the recognized definition of the word "jailer" is "keeper of a jail or prison." [Webster's New International Dictionary, Merriam Series.] Therefore, the 1841 Act must be held to have made provision for the appointment of a jailer to keep the jail of St. Louis County. The sheriff of St. Louis County, elected by the people, and the jailer of St. Louis County, appointed by the county court, could not both be the keeper of the jail of that county at the same time. By the clearest sort of implication the General Assembly decreed by the special Act of 1841 that, in so far as St. Louis County was concerned, the sheriff should not have "custody, rule, keeping and charge" of the jail of that county and could not appoint a jailer under himself to have charge of said jail for whose conduct such sheriff should be responsible.

The opinion of Judge Rosskopf, which was adopted as the opinion of this court, amply demonstrates that the special laws of 1841, 1851 and 1866 were valid when enacted and that they did not become invalid by reason of the provisions of the 1875 Constitution, prohibiting the passage of special laws. The jailer of the city of St. Louis now possesses all the rights and duties in respect to said jail which were possessed by the jailer of St. Louis County before the separation.

We agreed and still agree with Judge Rosskopf that the sheriff is the logical person to have charge of the jail in the city of St. Louis, in which are confined prisoners confided to his custody by the circuit court. But the question of policy is one for legislative action and not for this court. That argument cannnot be considered by us in determining the rights of the sheriff under existing expressions of the legislative will. The motion for rehearing is overruled.

*Walker, C. J.*, absent; *Graves, J.*, dissenting.