THE STATE ex rel. THOMAS B. BUCKNER et al. v. HENRY F. McELROY et al.

Division One, July 18, 1925.

1. **COUNTY COURT: Constitutional Powers: Management of County Affairs.** Section 36 of Article VI of the Missouri Constitution, declaring, among other things, that "in each county there shall be a county court, which . . . shall have jurisdiction to transact all county and such other business as may be prescribed by law," confers upon the county court exclusive jurisdiction to manage and control all matters pertaining to county affairs or county property, and nullifies so much of any legislative act as invests in a board of paroles composed of the judges of the circuit court the exclusive government, regulation, control and management of pub-

lic institutions in the county established for the detention, care and education of delinquent and dependent children, even though said act goes further and authorizes said parole board to consider, grant, revoke or terminate paroles of children convicted in the circuit court and detained in such institutions.

2. ———: ———: County Business. The term "county business," as those words are used in the section of the Constitution (Sec. 36, art. 6) declaring that the county court "shall have jurisdiction to transact all county and such other business as may be prescribed by law," means all business pertaining to the county as a corporate entity, and ordinarily includes the exercise of the corporate powers of the county, and must be understood to include the control and management of all county property, whether such property be in the form of penal or eleemosynary institutions, such as the jail, poor farm, and county institutions for the care and education of delinquent and neglected children detained therein under orders of the juvenile court; and such "county business" being vested by the Constitution in the county court, the Legislature cannot vest it in a board composed of the judges of the circuit court.

3. ———: Inefficient Management of County Institutions: Mandamus. Evidence tending to show that the county court is not furnishing a proper grade of food and clothing to the children confined in county eleemosynary institutions has no place in a mandamus suit brought against judges of the county court, the purpose of which is to oust the county court from the management of such institution, because certain legislative acts vest their control and management in a parole board composed of the judges of the circuit court, and wherein it must be held that so much of said acts are void. Even if the evidence established mismanagement, mandamus is not the remedy.

4. CONSTITUTIONAL LAW: Title: Parole Board: Salary. The title of the Act of 1919 (Secs. 13808 to 13814, R. S. 1919) and of the Act of 1921, Laws 1921, p. 611, two supplementary acts attempting to create a board of paroles for Jackson County composed of the judges of the circuit court, contained no doubleness, but those acts legally created a board of paroles, legally fixed the salary of its members, and imposed on them ample legitimate work to justify the salary granted, and so much of the acts as authorized the board to consider, grant, revoke or terminate paroles of delinquent or negligent children detained in county institutions, and to receive compensation for their services in that behalf, in addition to their salaries as judges, is valid, and can be separated from the invalid parts vesting the board with the control and management of those institutions, since it is apparent that the

Legislature would have enacted the acts if the invalid provisions had been omitted therefrom.

Corpus Juris-Cyc. References: Counties, 15 C. J., Section 53, p. 421, n. 9; Section 102, p. 456, n. 47, 48, 49. Statutes, 36 Cyc. p. 981, n. 44; p. 1042, n. 94.

## Mandamus.

PEREMPTORY WRIT DENIED.

*H. S. Conrad, T. J. Seehorn, A. L. Cooper* and *Wallace Sutherland* for relators.

(1)  By law, it is the duty of relators to manage the children's homes, and to purchase supplies therefor, without restraint by respondents; and it is the duty of respondents to order payment for such supplies so purchased. Secs. 13808 to 13814, R. S. 1919; Laws 1921, p. 543.  (2)  Respondents refused to pay bills for purchases of supplies for the Children's Homes made by relators; and at the time of said refusal, and at all times since, there have been sufficient funds with which respondents could have made payment thereof. Secs. 9537 and 9539, R. S. 1919; State ex rel. Clarke Co. v. Hackmann, 280 Mo. 686, 696; State ex rel. v. Johnson, 162 Mo. 629; Book v. Earl, 87 Mo. 246.  (3)  The statutes describing relators' duties are not violative of Section 10 of Article 10 of the Constitution of Missouri.  (a)  Upon principle and authority, it is well settled that the acts of the Legislature are presumed to be constitutional until the contrary is clearly shown; and it is only when they manifestly infringe on some provision of the Constitution that they can be declared void. County Court v. Griswald, 58 Mo. 192.  (b)  The legislature is the sole judge as to the expediency of making police regulations that are not prohibited by the Constitution. County Court v. Griswald, 58 Mo. 194; Young v. Kansas City, 152 Mo. 666; Hamilton v. St. Louis County Court, 15 Mo. 28.  (c)  The

Legislature has as much control over the revenues of the counties as it has over those of the State, unless restrained by some provision of the Constitution. State ex rel. v. Holliday, 70 Mo. 138; Hamilton v. St. Louis County, 15 Mo. 18; State ex rel. v. St. Louis County Court, 34 Mo. 570. (4) The act creating the Board of Paroles is not open to the objection that it contains more than one subject, and is not violative of Section 28 of Article 4 of the Constitution of Missouri. State v. Doering, 194 Mo. 408; Cox v. Ry. Co., 174 Mo. 602; State ex inf. v. Delmer Jockey Club, 200 Mo. 56. (5) The statutes prescribing relators' duties are not violative of Article 3 of the Constitution of Missouri. State ex rel. v. Higgins, 125 Mo. 364; State ex rel. Birmingham v. Ry. Co., 274 Mo. 140. (6) The act prescribing relators' duties is not a local or special law and is not violative of sub-section 2 (20) of Section 53 of Article 4 of the Constitution of Missouri, or of sub-section 15 thereof, or of sub-section 32 thereof. Dunne v. Cable Ry. Co., 131 Mo. 1, 5; State ex inf. Crow v. Flemming, 147 Mo. 1, 12; State ex rel. v. Speed, 183 Mo. 186; State v. Keating, 202 Mo. 197, 209; State ex inf. v. Southern, 265 Mo. 275. (7) Mandamus is the proper remedy to compel the County Court to pay bills necessarily contracted by the Parole Board for the maintenance of homes for delinquent and neglected children. Boone v. Todd, 3 Mo. 140; State ex rel. Industrial Home for Girls v. Pike County, 144 Mo. 275; State ex rel. v. Mason, 153 Mo. 23, 56; State ex rel. Baker v. Fraker, 166 Mo. 130; State ex rel. v. Cavendish, 94 S. E. (W. Va.) 149; State ex rel. Guyton v. Groom, 37 So. (Fla.) 303. Mandamus is the proper remedy to require the County Court to set aside an illegal order made in violation of a plain statutory provision. State ex rel. Wear v. Francis, 95 Mo. 44; State ex rel. Wolfe v. Bronson, 115 Mo. 271; State ex rel. v. School Board, 131 Mo. 505, 514; State ex rel. v. Railroad, 206 Mo. 251, 258; State ex rel. Barnes v. Board of Supervisors, 144 N. W. (Mich.) 883.

*Ralph S. Latshaw* and *John T. Barker* for respondents.

(1)   The control and management of all property belonging to the county is vested in the county court. The attempt to place the same under the control of the circuit court is void.   Sec. 36, Art. VI, Constitution of Missouri; Sec. 2574, R. S. 1919; Dist. v. Higby, 149 S. W. 381; Frost v. Cherry, 122 Pa. St. 426; Fragley v. Phelan, 126 Cal. 388; Co. v. Green, 22 Fla. 102; Russell v. Court, 75 Ore. 168; 15 C. J. 456, 536.   (2)   Non-judicial duties cannot be conferred upon the judiciary.   The attempt to place the control and management of the county property in the circuit court is void.   The appointment of employees is an executive duty and cannot be conferred upon the judiciary.   State ex inf. v. Washburn, 167 Mo. 696; State ex rel. v. St. Louis, 216 Mo. 96; State ex rel. v. Gordon, 236 Mo. 169; State ex rel. v. Wright, 251 Mo. 339; State ex rel. v. Neble, 19 L. R. A. (N. S.) 578, 107 N. W. 723; State ex rel. v. Brill, 100 Minn. 499; In re Elec. Suprs., 114 Mass. 247, 19 Am. Rep. 341; Ashley v. Wait, 8 A. L. R. 1468, 228 Mass. 63; State v. Young, 29 Minn. 474; Houseman v. Kent, 58 Mich. 364; Schwarz v. Dover, 68 N. J. L. 576; State v. Barker, 116 Iowa, 96, 57 L. R. A. 244; County v. Mitchell, 97 Md. 330; People v. Sanderson, 30 Cal. 160; Moreau v. County, 68 N. J. L. 480; Beasley v. Ridout, 94 Md. 641.   (3)   This act violates Section 28 of Article IV of the Constitution of Missouri in that the same contains more than one subject.   Nalley v. Co., 250 Mo. 471; State ex inf. v. Borden, 164 Mo. 236; Williams v. Railroad, 233 Mo. 676; Ex parte Loving, 178 Mo. 204; State v. Doerring, 194 Mo. 398; State v. Crites, 277 Mo. 199; State ex rel. v. Gordon, 233 Mo. 383.

*H. S. Conrad, T. J. Seehorn, A. L. Cooper* and *Wallace Sutherland* for relators in reply.

(1)   The Parole Board Act cannot be held violative of the constitutional provision that the county court shall

have jurisdiction to transact all county and such other business as may be prescribed by law, because: (a) A constitutional question cannot be injected into the case for the first time by argument or brief of counsel. Miller v. Connor, 250 Mo. 677, 684. (b) Even if the question had been raised in the pleadings, it would have to be determined against the respondents, because by the express terms of Section 36, Article VI, county courts are denied any rights except those that are expressly conferred. State ex rel. v. Patterson, 229 Mo. 391; Bayless v. Gibbs, 251 Mo. 492, 506. (2) The Parole Board Act is not violative of Article III of the Constitution on account of conferring non-judicial powers upon the judiciary. State ex rel. v. Higgins, 125 Mo. 368; Birmingham Drainage District v. Ry. Co., 274 Mo. 140; Sec. 2552, R. S. 1919; Gammon v. Lafayette County, 79 Mo. 223; Sayler v. Nodaway County, 159 Mo. 520; Motley v. Pike County, 233 Mo. 42; County of Boone v. Todd, 3 Mo. 140; State ex rel. Baker v. Fraker, 166 Mo. 130.

GRAVES, J.—Original action in mandamus. Relators are the duly elected and acting circuit judges of Jackson County, Missouri. Respondents are two of the county judges of said county. Relators among other things say:

"1. Relators are the judges of the Circuit Court of the Sixteenth Judicial Circuit, composed of Jackson County, Missouri, alone, wherein there is located a city having, according to the last preceding national census, not less than 300,000 and not more than 600,000 inhabitants, and relators are and were at all the times herein referred to the members of and composed the Board of Paroles of said county; and respondents are and were at all of said times the judges of the county court of said county.

"2. For several years last past, and now, there have been and are located and maintained in said county sundry public institutions for the detention, care and education of delinquent and dependent children, known

as Parental Schools, viz., the McCune Parental School for Boys (commonly known and hereinafter referred to as the McCune Home), the Jackson County Parental School for Girls (commonly known and hereinafter referred to as Girl's Home), and the Detention Home, all of which are, and have been for several years last past, under the exclusive government, regulation, control and management of said Board of Paroles in the exercise of the power, authority and duty conferred upon said board by the laws of the State of Missouri appertaining thereto.

"3.   There are now living in and domiciled at said institutions several hundreds of children, many of whom are of tender age, the boys being located at the McCune Home, the girls at the Girl's Home, and both boys and girls at the Detention Home, all of whom are constantly, from day to day, in imperative need of warm and serviceable clothing, nutritious food, beds, bedding, medicines and such other necessities of life as are essential to their health, reasonable comfort, education and general well-being and, as well, of books, school equipment and other personal property necessary for their care, maintenance and education, and to their consequent development as useful, self-supporting and law-abiding citizens, as designed and contemplated in the establishment of said institutions as public agencies and charities.

"4.   It is the duty of respondents as such judges of the county court to pay the expenses contracted and incurred by said Board of Paroles in the conduct, operation, government, management and maintenance of said institutions, including all expenses deemed by the said Board of Paroles to be necessary and proper, when duly certified by said Board of Paroles to the county court of said county—notwithstanding which and although funds are available therefor, the respondents have failed and refused to observe their said duty, but, on the contrary, with the design and purpose of usurping and arrogating to themselves the rights, powers and duties of said board and of relators as members thereof, and to hinder, interfere with and prevent the exercise, by said board and

relators, of their lawful rights, powers and duties, have, for many weeks last past,. pursued and are now pursuing a course of conduct and committing acts tending to and rendering said board unable to function and perform and discharge its legal powers and duties in the premises, in this, to-wit:

"(1)    Respondents have announced, ·declared and inaugurated a general plan and policy that the said county court would dishonor, repudiate and refuse to pay all bills, claims, debts and obligations incurred and contracted by the said board for supplies of all character for said institutions, unless and until the said board should first obtain the consent and approval thereto and thereof by said county court, and, further, that said supplies should be purchased by an agent appointed by said court and, by it, designated as purchasing agent."

The petition then charges that the county court made an order that all supplies purchased for any county institution, or for any county officer, should be made by a duly constituted purchasing agent, appointed by the county court, said order being in language as follows:

"The court orders that all supplies of whatever nature for every department, court, board, office, officer, or employee of this county shall hereafter be purchased only by requisition submitted to and approved by the county court before any such purchase shall be made and that said purchase shall thereupon be made in due course by the lawfully constituted purchasing agent of this county; and that any purchase made otherwise than as hereinbefore set out is illegal and void and constitutes no valid claim or legal or binding. charge against this county therefor.

"And the court orders that due public notice hereof be made by publication in two newspapers published in Independence, Missouri, and in. two newspapers published daily in Kansas City, Missouri, and also in the Daily Record of Kansas City, Missouri, once a week for four consecutive weeks. Approved unanimously. Judge Hayes giving as his reason for voting for said motion

that he desired a clear and distinct understanding as to whether or not the county purchasing agent was the legally authorized person to make all purchases for the county.''

The petition further charges that the county court (or a majority thereof) refused to pay a list of bills for merchandise bought for these institutions by the circuit judges acting as a Board of Paroles. They ask our writ to order the payment of such bills, and also to compel the county court to vacate or amend its order aforesaid, to the end that it might not interfere with the Board of Paroles.

Judge Elihu W. Hayes, of the county court, by his return, expresses a willingness to pay the bills and leave the mentioned institutions under the control of the Board of Paroles.

The other two judges of the county court, in their return, after admitting that these were the three named institutions in their county, then aver:

''Now at this date come the said Henry F. McElroy and Harry S. Truman, judges of the Jackson County County Court and for their return to the alternative writ of mandamus heretofore issued in this cause, admit that the relators are the judges of the Circuit Court of the Sixteenth Judicial Circuit composed of Jackson County, Missouri, alone, wherein there is located a city of not less than 300,000 and not more than 600,000 inhabitants and that respondents herein are and were at all of the times herein stated the judges of the County Court of said Jackson County, Missouri; admit that the McCune Parental School for Boys, the Jackson County Parental School for Girls and the Detention Home mentioned in relator's petition are located in said Jackson County, Missouri.

''Respondents further state that as judges of the County Court of Jackson County, Missouri, said homes and the management and control thereof, are vested exclusively in them, as the County Court of Jackson County, Missouri, and that relators as circuit judges of

said county have no control over any of said homes and have no authority to purchase supplies therefor, it being the duty of respondents to make such purchases.

"Respondents further state that relators, as circuit judges, claim that under and by virtue of Sections 13808 to 13814 inclusive of the Revised Statutes of Missouri of 1919, and the Laws of Missouri of 1921, pages 543 and 544, they are vested with the care and control of the homes heretofore mentioned, with authority to employ officers, servants and managers of said homes, and to purchase all property to be used in said homes, with the right to sell property now used by said homes.

"Respondents deny that relators as circuit judges have any right to control or manage said homes, or to purchase property and supplies therefor, or to sell the property belonging to Jackson County and used by said homes, because the management and control of all of the property of Jackson County is vested by authority of law in these respondents as judges of the County Court of Jackson County, Missouri. . . .

"Respondents further state that Sections 13808 to 13814 inclusive, Revised Statutes of Missouri of 1919, and the Session Laws of Missouri of 1921, at page 543, in so far as they attempt to confer the power claimed upon the relators, are unconstitutional and void, because they contravene and violate Article III of the Constitution of Missouri by allowing the judicial department to usurp the functions of the executive or the administrative branch of the Government.

"That said acts are void and unconstitutional and in violation of Section 28 of Article IV of the Constitution of Missouri in that said acts contain more than one subject, and there is no clear expression of such subjects in the titles of such acts.

"Respondents further state that said acts are void and unconstitutional as violating sub-section 20, Section 53 of Article IV of the Constitution of Missouri.

"Respondents further state that said acts are void and unconstitutional as violating sub-section 15 of

Section 53 of Article IV of the Constitution of Missouri.

"Respondents further state that said acts are void and unconstitutional as violating sub-section 32 of Section 53 of Article IV of the Constitution of Missouri.

"Respondents further state that said acts are void and unconstitutional as violating Section 10 of Article X of the Constitution of Missouri.

"Respondents further state that said acts are void and unconstitutional as conferring non-judicial power upon the judiciary.

"Respondents further state that said petition is multifarious, contradictory, inconsistent and uncertain.

"Respondents further state that said petition does not show that relators have exhausted or availed themselves of all legal remedies, and relators have an adequate remedy at law.

"Respondents further state that said petition and alternative writ and the matters and things therein, as stated and set forth, are not sufficient in law or equity to entitle the relators to the relief asked for in said petition, or to authorize the issuance of said peremptory writ of mandamus.

"Having fully answered, respondents pray the court to set aside the alternative writ of mandamus heretofore issued, and to deny the peremptory writ of mandamus demanded, and for such further and other orders as to the court shall be deemed meet and just."

The reply, although peculiar in form, suffices to place at issue the matters stated in the return, a portion only of which we have quoted from the return. The pleadings were such that a commissioner was appointed to take testimony and we have with us the evidence and findings of facts.

Under the real issues of the case but little of this may be of value. Such as may be can be noted.

I.   To our mind there is so much surplusage in both record and briefs that we should weed out the non-essentials and get down to the real issues. Much is said

about the grade of goods furnished by the county court, but all this has no place in this particular case, if the

**Statutes.** power to buy and furnish the goods rested with the county court. Much is said in pleading and proof as to the condition of the pauper fund in Jackson County, and this we think can be cast to the wind. The subject we discuss from the only legal angle later. ·

The first Board of Paroles for Jackson County was created by the Act of 1919, Laws 1919, p. 611 et seq. This act contained seven sections exclusive of the repealing and emergency clauses. These seven sections became Sections 13808 to 13814 (both inclusive) of the Revised Statutes of 1919. The judge of the criminal court was made *ex officio* chairman. The criminal court was abolished by the Act of 1921 and hence some changes were necessary. The Acts of 1921 (Laws of 1921, p. 543) is short and we quote it in full, as follows:

"Be it enacted by the General Assembly of the State of Missouri, as follows:

· "Section 1. *Repealing and re-enacting certain sections.* That Sections 13808 and 13814 of the Revised Statutes of Missouri 1919, relating to parole boards, be and the same are hereby repealed and the following new sections enacted in lieu thereof, to be known as Sections 13808 and 13814, and to read as follows:

"Sec. 13808. *Establishing a board of paroles in certain judicial circuits.* In any judicial circuit in this State, composed of a single county and wherein there is or shall be located a city now having or which may hereafter have, according to the last preceding national census, not less than three hundred thousand inhabitants and not more than six hundred thousand inhabitants, there is hereby created a board of paroles to be known as such, which shall be composed of the several judges of the circuit court of said county so composing said judicial circuit. The judges of said circuit shall, upon the passage of this act and thereafter from time to time, by a majority vote, select one of their number as chairman of said board of paroles; and said chairman together with any

two or more of said circuit judges in addition to said chairman are empowered to consider, grant, revoke, alter or terminate paroles as provided for in the next three succeeding sections hereof and as provided by law; provided that in the consideration of paroles of persons convicted in the circuit court of said county the judge trying said case wherein said conviction was had or receiving a plea of guilty, shall be present at said meeting of the board of paroles when considering the parole of persons who were convicted or pleaded guilty before him, unless unable to be present; and a majority of all of said judges shall constitute a quorum to transact such other business and perform such other duties of said board of paroles as hereinafter provided by Section 13812 and 13813, Revised Statutes of Missouri, 1919, as otherwise provided by law.

"Sec. 13814. *Compensation of members of parole board—time and place of meetings—rules thereof—how fixed.* The judges of the circuit court of said judicial circuit shall each receive as compensation for his services under this law as members of said parole board solely, a salary of fifteen hundred dollars per annum, said salary shall be paid by such county in equal monthly installments. The time, place and manner of meetings of said board of paroles and the rules for performing its duties shall be fixed from time to time by a majority of said board of paroles."

In the two new sections are made substantial changes as to the organization of the board. The duties were left the same, because those sections covering the duties were left (or attempted to be left) as in the Act of 1919, supra. Sections 13812 and 13813, Revised Statutes 1919 (being Secs. 5 and 6 of the Act of 1919, Laws 1919, pp. 612 and 613), are the ones which attempted to place the three institutions mentioned in our statement under the control of the Board of Paroles. If they are constitutional, they did place these institutions under the control of the Parole Board. These sections are challenged by respondents as being violative of the Constitution. They claim that

the control is lodged in the county court by the Constitution, and no mere statute can dislodge such power. The prime issue in the case is, therefore, a plain one, and of it next.

II. The gist of this case hovers around Section 36 of Article VI of the Missouri Constitution for 1875. This section reads: "In each county there shall be a county court, which shall be a court of record, and shall

*Jurisdiction of County Court.* have jurisdiction to transact *all* county and such other business as may be prescribed by law. The court shall consist of one or more judges, not exceeding three, of whom the probate judge may be one, as may be provided by law." By law these courts have been established so as to consist of a presiding judge (to be elected by the whole county) and two associate or district judges to be chosen by the electorate of their respective districts. But what we want to emphasize is the fact that the court is of constitutional origin, and its jurisdiction fixed by the Constitution. In the language of the organic law such court "shall have jurisdiction to transact *all* county . . . business." Other business may be added to its jurisdiction by law, but no law can take from it that which the Constitution expressly gives, i. e., that it shall transact all county business. By Section 2574, Revised Statutes 1919, such court is given control of all county property, both real and personal, and with it the added authority to purchase, lease and receive by donation any property, real or personal, for the county. Likewise we find the power to sell property belonging to the county, and to audit and settle *all* demands against the county. Much of this section has stood for many years, and is and was a legislative construction of the Constitution when it speaks of transacting county business. The law-makers understood that the transacting of county business meant the control of *all* county property, whether such property was in the nature of either penal or eleemosynary institutions. The law-makers would have just as much power to place the county jail, or the poor farm under the control of a parole

State ex rel. Buckner v. McElroy.

board, as they would have to place the three institutions mentioned in the pleadings herein. Or, to broaden the field, the divers state eleemosynary and penal institutions of the State could as well be placed in a board of supreme or circuit judges. The management of county and state property, having no direct connection with the work of the judges, should not be placed in the hands of judges. It has been ruled that courts can appoint agents and officers connected with the court and look after the property wherein the courts are held, and many things incidental to the workings of courts, but such is not the case here. For that reason we do not discuss or pass upon such matters. Here the power is conferred, by the Constitution, upon the County Court of Jackson County to manage and control these institutions and no mere legislative act can thwart the Constitution. Because a juvenile judge sends a boy or a girl to some kind of a county institution does not authorize the control of such institutions by such judges. The management, control and up-keep of such institutions have been lodged by the organic law in another forum.

The general rule is thus expressed in 15 Corpus Juris at page 456: "Except as otherwise provided by law, a board of county commissioners or county supervisors ordinarily exercises the corporate powers of the county. It is in an enlarged sense the representative and guardian of the county, having the management and control of its property and financial interests, and having original and exclusive jurisdiction over all matters pertaining to county affairs. Within the scope of its powers, it is supreme, and its acts are the acts of the county. While acts outside their statutory powers are without validity, yet, within the limits of the jurisdiction conferred on them by law, county boards have a wide, or at least a reasonable, discretion; and courts will not interfere with such boards in the lawful exercise of such jurisdiction, on the sole ground that their actions are characterized by lack of wisdom or sound discretion, it being permissible for equity to interfere only in cases of fraud or a clear abuse

309 Mo.—39.

of discretion. The county board cannot exercise its constitutional jurisdiction within the territorial limits of another county, nor can it justify its failure to perform a statutory duty, on the ground that obedience to the law is not necessary."

In this State the jurisdiction is fixed by the Constitution, and the Legislature is without power to limit the powers thus conferred. [See 15 C. J. p. 457.]

In Russell v. Crook County Court, 75 Ore. l. c. 169, "County Business" from a constitutional sense has been well defined. The syllabus reads:

"7. 'County business,' within Article VII, Section 11, 12, of the Constitution, authorizing the. Legislature to provide for the election of two commissioners to sit with the county judge while transacting county business, and the statute providing for the election of two persons to sit with the county judge in the transaction of county business, means all business pertaining to the county as a corporate entity, and the Legislature may neither limit nor extend the operation of the Constitution, and a proceeding to create a new county out of territory of an existing county is county business."

The California Court in Fragley v. Phelan, 126 Cal. l. c. 388, borrows the New York definition of "County Affairs," thus: "In defining the phrase 'county affairs' the court said in Hankins v. Mayor, 64 N. Y. 22: 'County affairs are those relating to the county in its organic and corporate capacity, and included within its governmental or corporate powers.' "

But we need not discuss the term "county business" as used in our Constitution, further than we have discussed it. It is clear that the control and management of these three county institutions was a part and parcel of the county business, and jurisdiction over this business has been lodged in the county court by the Constitution, and no mere statutes could dislodge this jurisdiction. The statutes which undertakes to lodge control of these institutions with the parole board of the county are

·violative of Section 36 of Article VI of our Constitution and are therefore void.

III.  The foregoing eliminates from the case all that evidence tending to show (as relators allege) that the county court was not furnishing a proper grade of food and other goods to these institutions.  There may be a remedy for such a condition, if it exists (a matter upon which we do not pass), but the present action is Valid in Part. not the remedy. . Those portions of the law which · undertake to lodge in the parole board of Jackson County the management and control of this purely county business, cannot stand, and our alternative writ of mandamus should be quashed, and our permanent writ denied.

In view, however, of a companion case by the same relators against the same respondents, we deem it proper to further discuss what remains of these statutes.  There is no doubleness of title either in the Act of 1919 or the Act of 1921, supra.  The whole trouble lies in the fact that the law-makers tried to impose upon this parole board some duties which belonged to another forum.  A parole board for Jackson County was legally created.  The salary of its members was legally fixed, and ample legitimate work was imposed upon the board to justify every cent of salary granted.  The board is splendidly organized under the Act of 1921, so as to not take away too much time from trial work.  It gives to the applicant for parole the benefit of having both the trial judge, and other judges sit at the hearing of his application.  So we not only have a complete working law (of great value) notwithstanding the original law be deleted by striking from it the unconstitutional matter.

But further, when we go to the sundry parole board acts passed at or about this same time, it is apparent that the chief legislative intent was by this indirect method (a method approved by this court several times) to add a mite of additional salary, by adding other duties, to underpaid circuit judges.  We have no doubt that the law-makers would have passed the bill without the matter

which we have stricken therefrom. The juvenile. work of the State stands in a similar situation. We therefore rule, in view of the question at issue, in the associated case, that there remains a valid parole board in and for Jackson County, although our permanent writ of mandamus must be and is denied. Respondents do not seriously question this situation in either case. All concur, except *Atwood, J.,* not sitting.