STATE OF MISSOURI, at the Relation of VICTORIA L. KOWATS, a Citizen of the State of Missouri, Residing in the City of St. Louis, Relator, v. GLENDY B. ARNOLD, Judge of the Probate Court Within and For the City of St. Louis.—No. 40226.—204 S .W. (2d) 254.

Court en Banc, June 9, 1947.

Rehearing Denied in Per Curiam Opinion filed, July 5, 1947.

*George L. Stemmler,* City Counselor, *James V. Frank,* First Associate City Counselor, and *Albert Miller,* Associate City Counselor, for relator.

*Glendy B. Arnold* for respondent.

ELLISON, J.—This is an original proceeding in mandamus to test the constitutionality of all or parts of thirteen statutes numbered Sec's 9321, 9328, 9329, 9333, 9334, 9335, 9336, 9338, 9339, 9344, 9345, 9346 and 9347, Laws Mo. 1945, Senate Bill 284, as against Art. II and Sec's 16 and 17, Art. V, Const. Mo. 1945.

The relatrix, Victoria L. Kowats, a citizen and resident of the City of St. Louis [which is also a county under Sec. 31, Art. VI, Const.

1945] seeks to compel the respondent, Hon. Glendy B. Arnold, judge of the probate court of said city, to assume jurisdiction under the foregoing statutes of an insanity inquisition filed by her in his court, wherein the objective is to have a named poor person of the city adjudged insane and committed to a state hospital or the city sanitarium *at public expense.* The respondent declines to entertain the cause on the sole ground that the cited statutes conflict with the above constitutional provisions, insofar as the former purport to vest such jurisdiction in the probate courts, except when the inquisition *is coupled with an application for the appointment of a guardian or curator.* The respondent filed a written opinion, which, by agreement, is to be taken as and for a return to our alternative writ.

We need not review at any length the recently enacted statutes involved, for they admittedly vest probate courts with the jurisdiction disputed by respondent. Thus, Sec. 9328 provides: "The probate courts of the several counties shall have power to send to a state hospital such of the insane ·of their respective counties as may be entitled thereto." Then it continues that the county shall pay for the support and maintenance of the patient. The sections following prescribe a procedure in such cases. The probate court does not order that the county shall pay such expenses: it merely makes an order setting forth that the person under adjudication is a fit subject to be sent to a specified state hospital, and the liability of the county follows by operation of law under the statute. The only authority the court has in that regard is, that under Sec. 9347 it may order its clerk to transmit to the superintendent of the designated hospital a certificate stating the patient has sufficient estate to support and maintain him at the hospital, in which case he becomes a pay patient by operation of the statute. Under Sec. 9345, if the finding of insanity and order are made by the probate court of the city of St. Louis, the hospital commissioner, or assistant hospital commissioner of the city may make supplemental orders authorizing the patient to be committed either to a state hospital or to the city sanitarium.

The respondent's opinion and return invokes the familiar provisions of Art. III, Const. 1875, now Art. II, Const. 1945, dividing the powers of the State government into three distinct departments—the legislative, executive and judicial—and forbidding that either shall encroach on the others. He points out that our probate courts belong to the judicial branch of the government; but maintains their power under the challenged statutes to charge the upkeep of the indigent insane to the counties is ministerial and executive. Thence he argues the statutes are unconstitutional, because that power conferred by them properly belongs to the county courts, or some agency of the executive department. Further, he contends Sec. 16, Art. V, Const. 1945 excludes such jurisdiction, because it contains no provision whatever about insanity except that it authorizes ▮ pro-

bate courts to appoint "guardians and curators of minors and persons of unsound mind," and to administer their estates. And finally, as an aid to the proper construction of our present statutory and constitutional law, respondent refers to our former law on the subject and the decisions construing it. We set out here in juxtaposition the pertinent parts of the two constitutional provisions directly involved, then and now:

*Sec. 36, Art. VI, Const. 1875*

"In each county there shall be a county court, which shall be a court of record, and shall have jurisdiction to transact all county and such other business as may be prescribed by law. The court shall consist of one or more judges, not exceeding three, of whom the probate judge may be one, as may be provided by law."

*Sec. 34, Art. VI, Const. 1875*

[After providing for the establishment of a probate court in every county]—"which shall be a court of record . . . Said court shall have jurisdiction over all matters pertaining to probate business, to granting letters testamentary and of administration, the appointment of guardians and curators of minors and persons of unsound mind, settling the accounts of executors, administrators, curators and guardians; and the sale or leasing of lands by administrators, curators and guardians . . ."

*Sec. 7, Art. VI, Const. 1945*

"In each county (not framing and adopting its own charter or adopting an alternative form of county government,) there shall be elected a county court of three members which shall manage all county business as prescribed by law, and keep an accurate record of its proceedings. The voters of any county may reduce the number of members to one or two as provided by law."

*Sec. 16, Art. V, Const. 1945*

"There shall be a probate court in each county with jurisdiction of all matters pertaining to probate business, to granting letters testamentary and of administration, the appointment of guardians and curators of minors and persons of unsound mind, settling the accounts of executors, administrators, curators and guardians, and the sale or leasing of lands by executors, administrators, curators and guardians, and of such other matters as are provided in this Constitution."

It will be found that said Sec. 36, Art. VI, Const. 1875, dealing with county courts, appeared under the title, "Judicial Department"; whereas said Sec. 7 in the Constitution of 1945 appears in Art. VI, now covering "Local Government". Again, under the former Constitution they were courts of record; whereas in the present Constitution that provision is omitted. Further, said Sec. 36 of the 1875 Constitution provided county courts should have *jurisdiction to transact*

all county business and such *other* business as *may be prescribed by law*; whereas said Sec. 7 of the present Constitution provides the county court shall *manage* all county business *as prescribed by law*. Apparently, said Sec. 36 of the former Constitution contemplated there was a class of business designated as "all county business", which the county courts had direct constitutional power to transact, and that the General Assembly might authorize them to transact other business. But said Sec. 7 of the present Constitution changed that provision and merely authorizes them to manage *all* county business *as prescribed* by law. And not only that: the section makes it possible for county courts to be abolished altogether in any county "framing and adopting its own charter or adopting an alternative form of county government."

As regards probate courts, the situation is different. So far as pertinent here Sec. 34, Art. VI, Const. 1875 and Sec. 16, Art. V, Const. 1945 are almost identical, save in two particulars. The latter section omits the provision declaring probate courts shall be courts of record, but it is included in the next section, 17. And the concluding lines of Sec. 16 are new, reading "and of such other matters as are provided in this Constitution." Probate courts or judges are mentioned in eleven[1] other sections of the Constitution of 1945. But none of these appear to have any bearing on this case except Sec. 17, Art. V, supra, and Sec. 1, Art. V, which makes probate courts constitutional courts but omits county courts, though they were included in the corresponding section of the Constitution of 1875. Thus it will be seen the authority of county courts is much restricted by the Constitution of 1945, whereas that of the probate courts is maintained, and perhaps increased because of the elimination of county courts as judicial tribunals. Of that we shall speak presently.

Respondent's opinion and return cites Downey v. Schrader, 353 Mo. 40, 44(4), 182 S. W. (2d) 320, 323(7). In that case the contention was that Sec. 34, Art. VI, Const. 1875 vested sole jurisdiction to hold lunacy inquisition in the probate courts; and that Sec. 36, Art. VI did not authorize the county courts to entertain such proceedings even where an indigent insane person was involved. For that reason it was asserted that Sec's 9328, 9335-9 and 9341, R. S. 1939-Mo. R. S. A. were void because unconstitutional. These are part of the sections repealed by Senate Bill 284, supra, which is under scrutiny here. We overruled that contention in the Downey case and held the county .courts did have that jurisdiction under Sec. 36, Art. VI, supra, as a part of the court's "county business", or business "provided by law", when the insane poor were involved, for whose keep the county would have to pay.

---

[1] Art. V, Sec's 1, 4, 7, 17, 18, 23, 24, 25, 26, 27, 29, and Art. VI, Sec. 18 (f), (g).

Respondent says we further held the probate court would *not* have that power under Sec. 34, Art. VI,. Const. 1875, for the purpose of committing insane patients to a state hospital; and that Sec. 34 then was the same as Sec. 16, Art. V, Const. 1945 is now. We think we did not go quite that far, but concerning probate courts we did say: "When the probate court holds a similar hearing for the purpose of appointing a guardian and administering an estate, it is transacting probate business. But they are not the same, and have not been through the years. Matters of probate business, as commonly understood and under all the authorities, pertain to the proving of wills, the appointment of guardians and curators, and the administration and settlement of decedents, incompetents and the like. 3 Words & Phrases (Perm. Ed.), p. 203; 26 ibid., p. 750; 34 ibid., p. 59."

Another case cited by respondent is Van Loo v. Osage County, 346 Mo. 358, 361(1), 366(3), 141 S. W. (2d) 805, 806, 809(2). There, a probate court had held an inquisition on the sanity of a poor person under Sec. 447, R. S. 1939-Mo. R. S. A., and a guardian was appointed. The main questions at issue were: whether that court had jurisdiction over the indigent insane; or whether the jurisdiction was solely in or concurrent with that of the county courts; and if the probate courts did have such jurisdiction, was it authorized to commit the person to a state hospital at public expense? The decision held the probate court had concurrent jurisdiction to hold insanity inquisitions on poor persons, but. could not commit them to state hospitals. The latter ruling, however, was not based on the Constitution (of 1875) but on the county court statutes, Sec's 9328, 9335-9, R. S. 1939-Mo. R. S. A. supra (now repealed by Senate Bill 284 supra), as construed in Ussery v. Haynes, 344 Mo. 530, 537(1), 127 S. W. (2d) 410, 414(1).

On the other point—that the probate courts *did* have concurrent jurisdiction with the county courts to adjudicate the insanity of indigent persons—the Van Loo case pointed out that insanity inquisitions had been authorized ever since the enactment in 1817. of 1 Mo. Territorial Laws, p. 508, the jurisdiction being vested in the circuit courts, which then had probate jurisdiction, 1 Mo. Territorial Laws, p. 395. Probate courts were originally established by statute, 1 R. S. 1825, p. 268. Jurisdiction was conferred on them to appoint or displace guardians of insane persons by 1 R. S. 1825, p. 270; and authority to hold lunacy inquisitions by 1 R. S. 1825, p. 429. These inquisitorial and appointive powers were transferred to the county courts by R. S. 1835, p. 323; R. S. 1845, p. 593; and R. S. 1855, p. 864. And by G. S. 1865, p. 234 they were vested in the county *or* probate courts.

But after the probate court was established as a constitutional tribunal by Sec. 1, Art. VI, Const. 1875, the power under that line of statutes was restricted to it by Sec's 5787, 5791, R. S. 1879, and has been ever since. The "county court statutes", as we have called them,

Sec's 9328, 9335-9, R. S. 1939—Mo. R. S. A., supra, appear to have had their inception in Laws Mo. 1909, pp. 572, 585, Sec. 47 et seq. dealing with Eleemosynary Institutions, and prior statutes dealing with "Asylums", running back to R. S. 1855, p. 226, Sec. 1, and p. 228, Sec. 8 et seq.; and Laws Mo. 1847, p. 62, sec. 15, which latter authorized the establishment of the first asylum at Fulton. These statutes disclose their paramount objective was the handling of the indigent insane patients whom the county would have to maintain. Our duty is to determine whether those objectives may be reached through our present statutory and constitutional law.

The first fact with which we are confronted is that under Sec. 7, Art. VI, Const. 1945 county courts are no longer courts in a juridical sense, but are ministerial bodies managing the county's business, with certain taxing and districting power which we are not here attempting to delimit. We cannot look to them for relief on the vexing question presented. It was doubtless for that reason that Senate Bill 284 was enacted, vesting in the probate courts the power to conduct insanity inquisitions. But Sec. 16, Art. V, Const. 1945, defining the powers of probate courts, is almost exactly like Sec. 34, Art. VI, Const. 1875 covering the same subject matter. In neither is there any express authorization to hold insanity inquisition. Sec. 16 merely empowers probate courts to appoint guardians and curators of persons of unsound mind, though, of course, to do that the court would first have to determine whether the person *is* of unsound mind.

However, in the sections of Senate Bill 284 cited in the beginning, there is no provision anywhere for the appointment of a guardian or curator. The whole tenor of the Act is that the sole questions for determination are whether the person under adjudication: is indigent; dangerous to himself and/or others; needs treatment and restraint; and should be sent to a state hospital at public expense. Can the probate court exercise that jurisdiction independent of the appointment of a guardian or curator? Respondent maintains that it cannot.

Sec. 16, Art. V, Const. 1945 is not by any means as clear and definite as we might wish. But even under the Constitution of 1875 the Van Loo case, supra, held a probate court could inquire into the sanity of an indigent person. And when the present Sec. 447, R. S. 1939-Mo. R. S. A. was amended by Laws Mo. 1903, p. 200, through the addition of a proviso that the probate court should "not have jurisdiction to inquire into the insanity of any person who is the owner of no property," this court held in the Redmond case[2] that the amendment was unconstitutional; and it was eliminated by Laws Mo. 1913, p. 94. The reasoning of the Redmond case was that the probate courts' constitutional jurisdiction under Sec. 34, Art. VI, Const. 1875 *could not*

---

[2]Redmond v. Q., O. & K. C. Rd. Co., 225 Mo. 721, 731-2(2), 126 S. W. 159, 162 (4-6).

be restricted to persons with property, because: it covered *all* insane persons; the power to determine sanity vel non was a foundational part of the proceeding; and an insane person needs a guardian over his person even though he have no property.

This last holding might be thought to signify that a guardian must be appointed as a part of the inquisition, as had been done in that case. And yet, if an indigent person be confined in a state hospital he is under restraint, and in a sense needs no guardian over his person, at least for the time being. Further, Sec. 501, R. S. 1939-Mo. R. S. A. in our probate law provides, as it has at least ever since the enactment of G. S. 1865, p. 238, sec. 49, that if any insane person be admitted to a state hospital as a patient, his guardian shall pay his expenses out of the ward's estate; but if the patient shall at any time come under the class of "insane poor persons" as specified in what we have referred to as the "asylum" or "county court" law, then the county must pay the expenses as provided therein. This statute is addressed to a situation where the patient had property in the beginning and became indigent later. But on that theory, it seems there would be no need to appoint a guardian or curator at all when the patient is indigent from the outset.

We have traced the history of our law on this subject rather fully to show the background when the Constitution of 1945 was adopted. Under the Constitution of 1875 both the probate courts and the county courts were constitutional courts, and the statutory law for both ran parallel. As we said in the Downey case, supra, their spheres then were somewhat different. But now, under the Constitution of 1945 the powers of the county courts have been narrowed and their status changed. Is it unwarranted to say that the constitutional powers of probate courts over the insane may thereby have been correspondingly increased, even though the provisions of Sec. 16, Art. V, Const. 1945 remains about the same as before? The rule of constitutional construction is almost axiomatic that a constitution should be construed as a whole, and its different provisions on the same subject construed together. And since this is true, it clearly follows that a change in one may affect another, which is, itself, in terms unchanged.

But even if it were otherwise, we think the difference between the powers of county and probate courts while the Constitution of 1875 was in force, was essentially due to the statutes governing the two, and that has been rectified by Senate Bill 284. We can see no reason why a probate court may not be authorized by law to order indigent insane persons sent to the state hospitals at public expense. Respondent argues *ab inconvenienti* that under the 1875 Constitution and statutory authority the city of St. Louis treated the commitment of thousands of insane paupers to its asylums as a ministerial matter to be handled by its Hospital Boards and other municipal authorities;

672

and that the enforcement of probate inquisitions will greatly increase the expense. That, of course, is a question for the General Assembly.

Respondent's final point is that under Senate Bill 284 the probate court may order the person under adjudcation sent to a state hospital or city sanitarium and charge his upkeep to the City without notice to it or an opportunity to be heard, in violation of due process. But in these proceedings the city is a county, a unit of the State government; and for nearly a hundred years our laws have subjected each county to liability for the maintenance of its insane poor in the state asylums. While the City has a special charter and maintains its own mental sanitariums, yet its charter must be in harmony with the law of the state. And we are unable to see why it, anymore than any other county of the state, should be entitled to notice of each insanity inquisition on an insane pauper. The statute fixes the liability.

After consideration of the points made in respondent's return, we conclude they are without merit, and that the alternative writ of mandamus heretofore issued should be made peremptory. It is so ordered. All concur:

PER CURIAM:—Respondent's motion for rehearing invokes State ex rel. Buckner v. McElroy, 309 Mo. 595, 608, 274 S. W. 749, 751, which was not cited below in the Probate Court's memorandum, or in our opinion. It ruled Sec. 6, Art. VI, Const. Mo. 1875 vested in the county courts "jurisdiction to transact all county business", and specifically the sole authority to manage and pay the maintenance costs of specified public institutions for the protection, care and education of delinquent and dependent children, to the exclusion of a Board of Paroles composed of circuit judges, created by a statute. That was true then, but as pointed out in the principal opinion, county courts are not constitutional courts now, and Sec. 7, Art. VI, Const. 1945 only gives them power to manage all county business as prescribed by law. They may be abolished altogether in certain counties. And the power to manage public institutions is quite a different thing from the power to adjudicate at insanity inquisitions. We think the case is not in point.

Another new point made in the motion is that under the Scheme and Charter of the City of St. Louis, adopted in 1876 pursuant to Sec. 20, Art. IX, Const. 1875, the Municipal Assembly took over the powers of the county court. And the question is asked: can those powers, as regards insanity inquisitions and commitments affecting the insane poor, be taken from the City by Senate Bill 284, supra. Respondent answers that question by saying the contrary was held by this court en banc in Lefman v. Schuler, 317 Mo. 671, 296 S. W. 808.

In that case the sheriff of the city sought to assume the powers of the city jailer under a general statute, now Sec. 9195, R. S. 1939-Mo. R. S. A., providing the sheriff of each county shall have charge of

the jail. The pertinent part of that identical statute had been in force at least since R. S. Mo. 1835, p. 335, sec. 2, long before the St. Louis Charter was adopted in 1876. But notwithstanding this general statute, special Acts were passed by the Legislature in 1841, 1851 and 1866, providing or permitting that a jailer should be in charge of the jail in St. Louis County. Such special Acts were valid in those days, and the Act of 1866 was not nullified by Sec. 53, Art. IV, Const. 1875 banning special and local laws in great part.

The 1866 Act was in force when the City and County of St. Louis were merged by the Charter of 1876, and the jailer was continued in charge of the jail in the City. By Laws Mo. 1877, p. 188 the Legislature recognized that fact, and provided the duties of the sheriff of the City should be the same as those of the sheriff of the County under the General and special laws then in force, *except* where inconsistent with the Charter. And Laws Mo. 1879, p. 39, provided all general and *special* laws applicable to sheriffs of the several counties of the State before the adoption of the Charter, should still apply to the sheriff of the City. This history was reviewed in the Lefman case, cited by respondent, and it held on a construction of the prior laws that the jailer *had not* been deprived of his duties; not that they *could not* be taken away from him.

The third point in the motion for rehearing is this. Respondent complains that the probate court in this case ruled the power to hold insanity inquisitions and issue commitments thereunder is *executive* in nature and not judicial. And he insists he is entitled to a "categorical answer" whether that holding was correct. Our answer is that the power is now judicial and not executive. When the county court exercised that power under Sec. 36, Art. VI, Const. 1875, it was a constitutional court. The exercise of the power may deprive the subject of precious constitutional rights, liberty and the enjoyment of property, which cannot be done without due process of law. And it will not do to say in such a case that relief can be obtained afterward by habeas corpus. 32 C. J., p. 626, sec. 162; p. 627, sec. 164; p. 628, sec. 165; p. 680, sec. 349; 28 Am. Jur., p. 661, secs. 9, 10; p. 672, sec. 25; Hunt v. Searcy, 167 Mo. 158, 171-182, 67 S. W. 206, 210-214; Conway v. Robinson (Mo. Div. 1), 178 S. W. 154, 158(3); In re Conner's Estate, 254 Mo. 65, 76-80(2), 162 S. W. 252, 255(3), 49 L. R. A. 1108; State ex rel. Paxton v. Guinotte, 257 Mo. 1, 11-12(2), 165 S. W. 718, 721, 51 L. R. A. (N. S.) 1191, Ann. Cas. 1915D, 658; Re Moynihan v. Hoctor, 332 Mo. 1022, 1034(6), 62 S. W. (2d) 410, 416(8), 91 A. L. R., 74.

For the reasons stated the motion for rehearing is overruled.