In the Matter of the Disincorporation of the CITY OF KINLOCH, ST. LOUIS COUNTY, MISSOURI, No. 41857—242 S. W. (2d) 59.

Division One, July 9, 1951.

Motion for Rehearing or to Modify Opinion or to Transfer to Banc

Overruled, September 10, 1951.

*Norman C. Parker* and *Flynn & Parker* for appellant; *Roy McKittrick* of counsel.

*Adrian L. Bushman* for respondents.

VAN OSDOL, C.—In this proceeding instituted by petition purportedly signed by two thirds of the legal voters of the City of Kinloch, a city of the fourth class in St. Louis County, the County Court of St. Louis County ordered the dissolution and disincorporation of the City and appointed a trustee to do the acts necessary to bring to a close all of the City's affairs. The County Court in making the order was acting pursuant to the provisions of Sections 7215 to 7220,

inclusive, R. S. 1939, Mo. R. S. A. §§ 7215 to 7220, now Sections 79.490 to 79.540 R. S. 1949.

The County Court granted an appeal to the Circuit Court of St. Louis County wherein upon a hearing *de novo* the County Court's order dissolving and disincorporating the City and appointing the trustee was affirmed. After a motion for a new trial and to set aside the order or judgment and to enter judgment denying the petition was overruled, the City appealed to this court. In the Circuit Court the appellant, City of Kinloch, had moved to dismiss the proceeding on the ground the County Court and the Circuit Court upon appeal had no jurisdiction ▮▮▮ of this proceeding. Appellant City correctly asserts herein that the case involves a construction of Section 1, Article V, and Section 7, Article VI, Constitution of Missouri, 1945, Mo. R. S. A. Const. Art. V, § 1 and Art. VI, § 7.

▮▮ It is appellant's primary contention that, since county courts have not been included in Section 1, Article V, Constitution of 1945, supra, which Constitutional provision enumerates the courts in which the "judicial power of the state" is vested, the County Court of St. Louis County had no jurisdiction or power to entertain the petition and to order the disincorporation of the City of Kinloch. Appellant also directs our attention to Section 7, Article VI, Constitution of 1945, providing that county courts "shall manage all county business as prescribed by law"; and appellant reminds us that county courts are no longer courts in a juridical sense. State ex rel. Kowats v. Arnold, 356 Mo. 661, 204 S. W. 2d 254. Appellant asserts that a proceeding for the disincorporation of a city involves the exercise of "a judicial function." Appellant insists that the Constitution of 1945 has deprived county courts of power to exercise judicial functions, and Section 79.490, supra, is no longer effective in giving county courts the power to order the disincorporation of a fourth-class city.

It does not necessarily follow that, because county courts are no longer courts of record and are no longer vested with "judicial power," county courts may not continue, as the legislative agency, to hear and determine facts upon which the legislative will as expressed by statute is to be effectuated in disincorporating a city.

Section 79.490 reads as follows,

"The county court of any county in which a city of the fourth class is located shall have the power to disincorporate such city upon petition of two-thirds of the legal voters of such city. No city of the fourth class shall be disincorporated by virtue of this section, unless notice has been given of the intended application for such disincorporation, by advertisement published in some newspaper published in the city prayed to be disincorporated, for four weeks successively prior to such application, and if no newspaper is published in said city, then by advertising in the newspaper in such county nearest to such city; and such advertisement

and notice shall contain a copy of such petition and the names of the petitioners.''

In State ex rel. and to Use of Behrens v. Crismon, 354 Mo. 174, 188 S. W. 2d 937, it is said, '' 'The power to create or establish municipal corporations, or to enlarge or diminish their area, to reorganize their governments, or to dissolve or abolish them altogether is a political function which rests solely in the legislative branch of the government, and in the absence of constitutional restrictions, the power is practically unlimited.' 37 Am. Jur., Municipal Corporations, Sec. 7, p. 626. In that connection this court has said: 'It has long been the rule in this state, and generally throughout the country, that the power of the legislature in the creation of public corporations - - - is absolute except where limited by the constitution. The legislature may also change, divide, consolidate and abolish them as the public welfare demands.' State ex rel. Consolidated School District No. 8 of Pemiscot County et al. v. Smith, State Auditor, 343 Mo. 288, 121 S. W. 2d 160, 162, and cases therein cited.'' A municipal corporation when once incorporated can only become disincorporated by resorting to the proceedings pointed out by statute. State ex rel. and to Use of Behrens v. Crimson, supra; State ex rel. Hambleton v. Town of Dexter, 89 Mo. 188, 1 S. W. 234.

Prior to the case In re City of Uniondale, 285 Mo. 143, 225 S. W. 985, the questions of the nature of a county court's duties or functions as being either purely ministerial or judicial, and of the consequent right of appeal from a determination, order or judgment of a county court in incorporating or disincorporating a town or city were somewhat in doubt because of the decisions of the Kansas City and Springfield Courts of Appeals, respectively, in the case of Hall v. DeArmond, 46 Mo. App. 596; and in the case In re Town of Arcadia, Mo. App., 201 S. W. 359. In the Hall case, the Kansas City Court of Appeals expressed the view that ''matter presented by a petition for incorporation is not judicial. It is more, in its nature, administrative or ministerial. When a petition containing the requisite number of petitioners is duly presented, the incorporation is granted as of course. There seems to be no discretion in the county court.'' In the Arcadia case, the Springfield Court of Appeals followed the Hall case, and affirmed a circuit court's judgment dismissing an appeal from a county court's order disincorporating the town of Arcadia.

In the case In re Incorporation of Uniondale, Mo. App., 203 S. W. 508, the St. Louis Court of Appeals held an appeal was allowable from an order of the county court in an incorporating proceeding; the court was of the opinion that the order was clearly one in the nature of a judgment in rendering which the county court was acting in a judicial capacity. However, the St. Louis Court of Appeals certified the case to this court on the ground the decision was in conflict with Hall v. DeArmond, supra; and In re Town of Arcadia,

supra. This court in examining the Uniondale case approved the decision of the St. Louis Court of Appeals with respect to the part of the decision holding the county court's order was appealable, stating the order of the county court had "the force and effect of a judgment." But this court in its opinion further stated, "while the county court in passing upon the petition is performing a judicial function and its pronouncement thereon is a judgment, yet all the agencies invoked by the statute—the majority of the taxable inhabitants, their petition and the county court—taken collectively, is but the instrumentality through which, in the manner prescribed, the Legislative power is exercised in creating cities of the fourth class." In re City of Uniondale, supra, 285 Mo. at page 151, 225 S. W. at page 987. See also In re City of Berkeley, Mo. App., 155 S. W. 2d 138.

In the early case of Kayser v. Trustees of Bremen, 16 Mo. 88, at page 91, it was pointed out that the Act of 1845 for the Incorporation of Towns did not delegate political power to county courts. It was said the duties imposed on county courts in relation to the subject are "judicial in their nature"; the court continued—"They have no discretion. They have no authority to vest any power in the corporation. Their office is, upon the performance of certain acts by the inhabitants, to declare them incorporated, *if satisfied of the verity of the facts set forth*, and then the law declares the powers of which the corporation shall be possessed." (Our italics.)

We believe this court, in the Uniondale and Kayser cases, was in no way intending to say that the county courts, in passing upon the petitions for incorporation, were performing a judicial function in the sense of exercising the "judicial power" of a court in administering justice between litigants by the selection and application of appropriate principles of law or equity.

A statute by which an official (or a board, commission or other agency) is required to ascertain the existence of facts and apply the law to the facts in order to determine his official action does not necessarily confer "judicial power" in a Constitutional sense. The Constitutional meaning of "judicial power of the state" does not contemplate every exercise of duties judicial in nature, but refers to such powers and authority as courts and judges exercise; such as legitimately pertain to an officer in the department designated by the Constitution as "judicial"; such as are exercised in the ordinary forms of a court of justice, in a suit between parties, with process. State ex rel. School District No. 1 v. Andrae, 216 Mo. 617, 116 S. W. 561. Many administrative and quasi-judicial bodies, as a part of their delegated duties, must hear and determine facts in order to ascertain what action the law imposes upon them. In this respect such bodies are performing duties judicial in nature. But an administrative body or even a quasi-judicial body is not and cannot be a

court in a Constitutional sense. State ex rel. Keitel v. Harris, 353 Mo. 1043, 186 S. W. 2d 31.

Returning to the consideration of Section 79.490, supra—the sole duties of the County Court of St. Louis County were to determine if notice of the intended application had been given as required by the statute, and to determine if the petition was by two thirds of the legal voters of the City. The County Court could only hear and determine the facts which the legislature has said will effectuate the legislative power to disincorporate City. If the determined facts as to signatories to the petition and publication of notice met with the requirements of the statute, the statute was mandatory in effectuating the legislative will. The statute does not vest a county court with either legislative or judicial discretion. In such "hearing and determination" the County Court was "exercising a judicial function," or performing "duties judicial in nature." In this respect an incorporating proceeding or a disincorporating proceeding has somewhat the characteristics of a true action at law or in equity. But in the performance of its whole duties, it seems to us, the County Court was not exercising "judicial power" such as is vested in certain courts, other than county courts, by Section 1, Art. V, Constitution of 1945; it was merely acting as the legislative agent to hear and determine the facts. It was a part of the instrumentality through which, by Section 79.490, supra, the legislative power is exercised in disincorporating fourth-class cities. In re City of Uniondale, supra; Kayser v. Trustees of Bremen, supra; In re City of Berkeley, supra.

The legislature in providing for the dissolution of a municipal corporation may provide an orderly method for the liquidation of its affairs. Vol. 2, McQuillin, Municipal Corporations, 3d Ed., § 8.12, p. 430; Town of South Tucson v. Board of Sup'rs of Pima County, 52 Ariz. 575, 84 P. 2d 581; Caldwell v. Harris, 185 Tenn. 209, 204 S. W. 2d 1019. In the Arizona case, the county board of supervisors ordered the disincorporation of a town and appointed a trustee with authority to wind up the affairs of the corporation, sell its property, pay its debts, and return the surplus of the proceeds of the sale of property into the county treasury—all pursuant to the provisions of the Arizona code pertaining to disincorporation of towns. (See again our Sections 79.510, 79.520, 79.530 and 79.540, supra.) The Supreme Court of Arizona ruled adversely the contention that the statute authorizing the county board of supervisors to appoint a trustee was unconstitutional in conferring "judicial power" upon the board.

We do not construe Section 7, Article VI, Constitution of 1945, as meaning the county court may not be given authority by law to act as the legislative agent in proceedings to effectuate the legislative power in creating or abolishing cities. Section 7 does not say county courts may not be given such statutory authority. Nor do we con-

sider the cases of State ex rel. Lane v. Pankey, 359 Mo. 118, 221 S. W. 2d 195; Rippeto v. Thompson, 358 Mo. 721, 216 S. W. 2d 505; and State ex rel. Kowats v. Arnold, supra, as authorities for strictly construing Section 7 to mean county courts may have statutory authority to act only in the management of the county's fiscal affairs. But the Lane, Rippeto and Kowats cases do clearly hold county courts now can have no authority to determine matters comprehending judicial action in the exercise of "the judicial power of the state."

■ Section 478.070 (4), R. S. 1949, formerly Section 2100 R. S. 1939, has been construed as applicable to and providing for appeals from county court judgments and orders in cases *which partake in some respect* of the characteristics of an action at law or in equity (Section 49.230, R. S. 1949, formerly Section 2490 R. S. 1939), and in which the circuit court can hear the evidence and from that enter up a judgment of its own. State ex rel. Dietrich v. Daues, 315 Mo. 701, 287 S. W. 430; Bradford v. Phelps County, 357 Mo. 830, 210 S. W. 2d 996; In re City of Uniondale, supra. We see no reason why the Sections should not continue to be available and implement an appeal from the determination of a county court in incorporating or disincorporating proceedings in so far as the determination calls for the exercise of duties judicial in nature.

■ As we have said the Circuit Court, upon appeal, heard and determined the case anew; but the Circuit Court, upon objection, excluded evidence bearing upon the advantages or disadvantages of retaining the corporate existence of Kinloch. The Circuit Court had the correct view that the only questions for determination were ■ "whether or not the petition to disincorporate contains two thirds of the legal voters of the city," and whether the notice of the intended application had been "duly published in the newspaper as required by law." It remains for us to examine the whole record and decide whether the Circuit Court's affirmative determination of these questions was sustained by the evidence.

■ The petition for disincorporation was filed in the County Court of St. Louis County, March 25, 1949. Kinloch had been incorporated as a city of the fourth class by order of the County Court of St. Louis County, August 20, 1948. In that proceeding the County Court made the finding that the territory comprehended and included in the City of Kinloch contained a population of more than 500 and less than 3000 inhabitants. Section 72.040 R. S. 1949. There was evidence in the instant case that the number of inhabitants of Kinloch had not increased since August 20, 1948; however, the acting director of census certified the population of Kinloch, according to the returns of a special census as of August 30, 1949, was 5101, of which number 2851 persons were 21 years of age and over. The director's certificate was considered as if introduced into evidence. Assuming the 2851 persons were legal voters, the petition for disincorporation filed March 25,

1949,. was insufficient in number of signers, inasmuch as the Circuit Court justifiedly found the signing petitioners, and the names of petitioners printed in the notice of the intended proceedings, were 1948, of which number only 1814 were legal voters. The Circuit Court was of the opinion the number of persons "21 years of age and over" as of August 30, 1949, shown by the certificate of the census director, was highly speculative in tending to show the total number of legal voters of Kinloch, because there was no way to determine how many of the 2851 persons were actually legal voters when the petition was filed. We agree with the Circuit Court's view that the certificate of the census director was insufficient, in itself, to show the number of legal voters of Kinloch.

On the other hand the Circuit Court did rely upon lists, purportedly the lists or copies of the lists of registered voters of Kinloch. Such lists are attached to the petition for disincorporation. There was no evidence authenticating the lists. Had the registration lists been authenticated or verified by evidence as true and complete lists of all registered voters of Kinloch, we believe such lists when introduced would have been substantial evidence and of sustaining weight in determining the number of legal voters; but we are constrained to say that lists, not verified by any testimony whatsoever, were insufficient bases for a determination of the number of legal voters of Kinloch. There was no other evidence introduced tending to show the whole number of legal voters of Kinloch. The record discloses no reasonable or substantial basis for a finding of the total number of legal voters; consequently, there can be no computation and determination that the 1814 legal voters, signers of the petition, comprised two thirds of the legal voters of the City.

The proof of publication of the notice of intended application for disincorporation of Kinloch shows publication in the newspaper, "Town Talk," published in Ferguson, Missouri. There was no evidence tending to show that no newspaper was published in Kinloch; nor was there any showing that the newspaper, "Town Talk," was the newspaper in St. Louis County "nearest to" the City of Kinloch. See again Section 79.490, supra. Petitioners-respondents do not assert, and we do not believe these factual matters are within the field of judicial notice. Compare Atkeson v. Lay, 115 Mo. 538, 22 S. W. 481. The proof of the facts of publication of the notice in accordance with the statute (and of the required number and qualifications of the petitioners) was essential in empowering the County Court, and the Circuit Court upon appeal, to order the disincorporation of City. Section 79.490, supra; Hambleton v. Town of Dexter, supra; In re City of Berkeley, supra; Boone County v. Town of Verona, 190 Ky. 430, 227 S. W. 804, Green v Davis, 253 Ky. 105, 68 S. W. 2d 750; 62 C. J. S., Municipal Corporations, § 104, p. 233. The notice is not like process as against a city in an action by a

creditor, in which action, the city having answered, a defect of service of the process ■■■ was waived. See State ex rel. City of Jefferson v. Hackmann, 287 Mo. 156, 299 S. W. 1082, cited by petitioners-respondents.

■ In our examination of the extended record and exhibits, we have come to the conclusion that the evidence does not support the Circuit Court's order. We believe the petitioners failed to prove compliance with the requirements stated by Section 79.490 as conditional to the exercise of the power given county courts to disincorporate City. However, the record indicates that evidence is available upon which the Circuit Court may be able to determine whether or not the stated essential requirements of Section 79.490 have been complied with. In the situation it is a settled practice of appellate procedure that a case should not be reversed upon failure of proof without remand. Lance v. Van Winkle, 358 Mo. 143, 213 S. W. (2d) 401; Knorp v. Thompson, 352 Mo. 44, 175 S. W. 2d 889. Bowzer v. State Highway Commission, Mo. Sup., 170 S. W. 2d 399; Markley v. Kansas City Southern R. Co., 338 Mo. 436, 90 S. W. 2d 409; Byrne v. Prudential Ins. Co., Mo. Sup., 88 S. W. 2d 344.

The order of disincorporation should be reversed, and the cause remanded.

It is so ordered. *Lozier, C.,* concurs in the result; *Coil, C.,* concurs.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur except *Conkling, P. J.,* who concurs in result only.